VANEST, Appellant,

v.

PILLSBURY COMPANY et al., Appellees.

[Cite as *Vanest v. Pillsbury Co.* (1997), 124 Ohio App.3d 525.]

Court of Appeals of Ohio,
Fourth District, Jackson County.

No. 97 CA 800.

Decided Dec. 19, 1997.

526

*Russell A. Kelm* and *Joanne F. Weber*, for appellant.

*Duke W. Thomas* and *Keith W. Hult*, for appellees.

PETER B. ABELE, Judge.

This is an appeal from a Jackson County Common Pleas Court judgment denying Thomas O. Vanest, plaintiff below and appellant herein, relief from summary judgment entered in favor of the Pillsbury Company and Glen L. Crawford, defendants below and appellees herein.

Appellant assigns the following errors:

### FIRST ASSIGNMENT OF ERROR:

"The trial court erred in granting defendants' motion for summary judgment without consideration of plaintiff's opposition thereto."

### SECOND ASSIGNMENT OF ERROR:

"The trial court erred in denying appellant's motion for relief under rule 60(B)."

## THIRD ASSIGNMENT OF ERROR:

"The trial court erred in denying plaintiff certain discovery in this age discrimination case."

Our review of the record discloses the following facts pertinent to this appeal. Appellant began working for the Pillsbury Company ("Pillsbury") in 1968. In 1992, after appellant had occupied various positions with Pillsbury, ranging from a quality control technician to plant manager, Glen L. Crawford, the Vice President of Pizza Production, offered appellant the position of director of manufacturing at the Wellston, Ohio facility. Apparently, both appellant and Crawford expected that within a year or two appellant would be promoted to plant manager of the Wellston facility. Appellant, however, did not receive the promotion, and in October 1993, Crawford announced his decision to terminate appellant. Appellant was officially terminated in January 1994.

On February 17, 1994, appellant filed a complaint alleging that appellees terminated his employment at Pillsbury's Wellston, Ohio plant on the basis of age and that appellees engaged in a pattern or practice of age discrimination.

On January 2, 1997, appellees filed a motion for summary judgment asserting that appellant could not establish a prima facie case of age discrimination. When appellant's counsel received appellees' motion for summary judgment, they searched the Jackson County local rules of court to determine the response date for appellant's opposition memorandum. Appellant's attorneys were unable to locate a local rule governing the due date for a memorandum in opposition to a motion for summary judgment.

On January 8, 1997, appellees and appellant engaged in a mediation conference with retired Judge Donald Cox. Appellant's counsel asked retired Judge Cox if he knew the due date for a memorandum in opposition to summary judgment. Appellant asserts that retired Judge Cox informed appellant's counsel that a memorandum in opposition was due within twenty-eight days after the motion was filed. Appellant's counsel, therefore, noted January 28, 1997 as the due date for his opposition memorandum.

On January 9, 1997, the trial court scheduled appellees' motion for summary judgment for a non-oral hearing on January 23, 1997. The trial court sent appellant and appellees written notice [1] of the non-oral hearing date and informed

---

1. The notice reads as follows:

 "Please take notice that this case has been scheduled for non-oral hearing on DEFEN-DANTS' MOTION FOR SUMMARY JUDGMENT on THURSDAY, JANUARY 23RD, 1997 at 4:00 o'clock p.m.

 "This is merely a deadline for the parties to file arguments and evidence. ATTENDANCE IS THEREFORE NOT REQUIRED."

the parties of the January 23, 1997 deadline for filing evidence and arguments concerning appellees' motion for summary judgment. Appellant's attorneys admit that they received the notice. On Friday, January 10, 1997, when appellant's attorneys received the notice, they were preparing for a trial that began on Monday, January 13, 1997 in Toledo and, apparently, did not carefully read the notice.[2]

On January 22, 1997, appellees filed a supplemental memorandum in support of their motion for summary judgment. As of January 23, 1997, appellant had not responded to appellees' motion.

On January 23, 1997, the parties were scheduled to attend a pretrial conference. Appellant's attorneys, however, soon became aware that they would be unable to attend due to a conflict with the trial in Toledo. Appellant moved for a continuance of the pretrial or, alternatively, requested that the pretrial be conducted by telephone. The trial court apparently did not grant appellant's request for a continuance.

As appellant's attorneys found it impossible to be "in two places at one time," counsel requested the judge presiding over the trial in federal court, Judge Carr, to telephone the Jackson County judge, Judge Holzapfel. On January 22, 1997, Judge Carr informed Judge Holzapfel that appellant's attorneys were involved in a trial in Toledo and would be unable to attend the pretrial conference on January 23, 1997. Judge Carr further stated that appellant's attorneys could be held in contempt if either left to attend the pretrial. Accordingly, Judge Holzapfel deferred to Judge Carr's request and continued the pretrial.

On January 27, 1997, the trial court, finding that appellant failed to establish a prima facie case of age discrimination, issued a "Decision and Order" granting appellees' motion for summary judgment.

On January 29, 1997, appellant requested the court to enlarge the time to respond to appellees' motion for summary judgment. Appellant also filed a motion for relief from judgment, pursuant to Civ.R. 60(B)(1), from the court's "Decision and Order" granting appellees' motion for summary judgment. In his motion for relief from judgment, appellant argued that he failed to timely respond to appellees' motion due to counsel's inadvertence and excusable neglect.

On March 31, 1997, the trial court issued a judgment entry reflecting its "Decision and Order" of January 27, 1997 that had granted appellees' motion for summary judgment.

---

2. In appellant's brief before this court, appellant states as follows:

"Neither [of appellant's attorneys] focused on the Order or the fact that it gave a non-oral hearing date which was different from the due date that had been previously docketed in the firm's computer system."

On April 8, 1997, the trial court issued a "Decision and Order" denying appellant's motion for relief. The trial court found that appellant's failure to respond to appellees' motion for summary judgment did not result from the excusable neglect or inadvertence of appellant's counsel. The trial court did not agree with appellant's counsel's assertion that their reliance on retired Judge Cox's statement concerning the due date for an opposition memorandum met the standard of excusable neglect or inadvertence. Rather, the trial court found that appellant's counsel's failure to read the notice of non-oral hearing constituted inexcusable neglect.

Furthermore, appellant's counsel suggested that because the trial court knew that appellant's attorneys were "fully occupied" with the trial in Toledo and knew that appellant's attorneys were unable to attend the pretrial conference on January 23, 1997, the trial court should have known that appellant's attorneys would not be able to respond to appellees' motion for summary judgment by January 23, 1997. Appellant's attorneys imply that the trial court, on its own motion, should have continued the non-oral hearing date. The trial court found counsel's suggestion "ludicrous."

On April 11, 1997, appellant timely filed a notice of appeal.

## I & II

As appellant's first and second assignments of error raise related issues, we will address them together.

 First, appellant contends that the trial court erred by granting appellees' motion for summary judgment without considering appellant's untimely filed opposition materials. Appellant argues, essentially, that if the trial court also had considered appellant's arguments and evidence, granting summary judgment in favor of appellees would have been inappropriate. Appellant asserts that the trial court, pursuant to its *nunc pro tunc* authority, should have enlarged his response time to appellees' motion for summary judgment and considered his opposition memorandum.[3] Second, appellant asserts that the trial court erred by

---

3. We disagree with appellant's assertion that the trial court should have enlarged the response time *nunc pro tunc*. The trial court set January 23, 1997 as the deadline for filing materials in support of and in opposition to the motion for summary judgment. Prior to the deadline, appellant did not request an extension of time. Rather, after the time for a response already had expired, appellant requested the court to enlarge the time pursuant to its own *"nunc pro tunc"* authority.

Although a trial court generally enjoys a great deal of discretion in ruling on a motion for an extension of time, see *Fulwiler v. Schneider* (1995), 104 Ohio App.3d 398, 405, 662 N.E.2d 82, 86, a trial court ordinarily may not grant such a motion pursuant to its *nunc pro tunc* authority. A trial court properly may exercise its *nunc pro tunc* authority in limited situations.

overruling his motion for relief from the "Decision and Order" entered on January 27, 1997 and finalized as a judgment on March 31, 1997.

As a preliminary matter, we must sort through certain procedural issues associated with appellant's "motion for relief from judgment."

On January 27, 1997, the trial court issued a "Decision and Order" granting appellees' motion for summary judgment. On January 29, 1997, appellant filed a Civ.R. 60(B) motion seeking relief from the trial court's January 27, 1997 "Decision and Order." On March 31, 1997, the trial court issued its final judgment sustaining appellees' motion for final judgment.

■ By its terms, Civ.R. 60(B) applies only to final judgments or orders. See Civ.R. 60(B) ("On motion and upon such terms as are just, the court may relieve

---

In *Natl. Life Ins. Co. v. Kohn* (1937), 133 Ohio St. 111, 113, 10 O.O. 122, 123, 11 N.E.2d 1020, 1021, the Supreme Court described *nunc pro tunc* procedure as follows:

"It is elementary that courts possess inherent common-law power to enter judgments or orders *nunc pro tunc* in proper cases. The phrase meaning simply 'now for then' is accurately descriptive. The general purpose of such an entry is to record a prior but unrecorded act of the court. In other words, the power to make *nunc pro tunc* entries is restricted ordinarily to the subsequent recording of judicial action previously and actually taken. It is a simple device by which a court may make its journal speak the truth."

In the present case, the trial court, had it granted appellant's motion for an enlargement of time, would have exceeded its *nunc pro tunc* authority. The court already had set the time within which appellant was to respond. By enlarging the time within which appellant had to respond to appellees' motion for summary judgment, the court would not have been merely making the record speak the truth. Therefore, a *nunc pro tunc* entry enlarging the time to respond would have been inappropriate.

Furthermore, we note that a party generally has three alternatives when requesting an extension of time to respond to a summary judgment motion. First, Civ.R. 56(F) allows a party to request a continuance if he is unable to secure, by affidavit, facts necessary to substantiate his opposition. Second, Civ.R. 6(B)(1) allows a party to request an extension of time if the party makes the request before the original time period for a response has expired. Third, Civ.R. 6(B)(2) permits a party to request, after the original time period for a response already has expired, additional time within which to respond if the failure to respond was the result of excusable neglect. Moreover, when a party fails to request a continuance pursuant to Civ.R. 56(F), a trial court generally is free to consider a motion for summary judgment. See *BFI Waste Sys. of Ohio v. Garfield* (1994), 94 Ohio App.3d 62, 640 N.E.2d 227; *Grange Mut. Cas. Co. v. State Auto. Mut. Ins. Co.* (1983), 13 Ohio App.3d 217, 13 OBR 267, 468 N.E.2d 909.

In the case at bar, in the absence of compliance with Civ.R. 56(F), Civ.R. 6(B)(2) was appellant's only other avenue by which to seek an enlargement of time within which to respond. See McCormac, Ohio Civil Rules Practice (2 Ed.1992) 135, Section 6.06 ("When a motion is made after the expiration of the period, an extension can be granted only when the failure to act was a result of excusable neglect."). Civ.R. 6(B)(2) provides:

"(B) Time: extension. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion * * * (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect * * *."

a party or his legal representative from a *final* judgment * * *.") (Emphasis added.); *Jarrett v. Dayton Osteopathic Hosp., Inc.* (1985), 20 Ohio St.3d 77, 78, 20 OBR 407, 407–408, 486 N.E.2d 99, 100; *Keenan v. Huntington Acceptance Co.* (1993), 91 Ohio App.3d 795, 811, 633 N.E.2d 1164, 1174. It follows that Civ.R. 60(B) is not the proper procedural device a party should employ when seeking relief from a non-final order. *Jarrett, supra.* Rather, to obtain relief from a non-final order, a party should file a motion for reconsideration with the court. *Pitts, supra.*

 Appellant filed his "motion for relief from judgment" on January 29, 1997—approximately two months before the entry of a final judgment.[4] Thus, when appellant filed his "motion for relief from judgment," no judgment from

---

We note that appellant's combined motion to enlarge the time within which to respond and motion for relief from judgment is essentially a Civ.R. 6(B)(2) motion.

4. R.C. 2505.02 defines a "final order" as follows:

"An order that affects a substantial right in an action which in effect determines the action and prevents a judgment, an order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment, or an order that vacates or sets aside a judgment or grants a new trial is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial."

In determining what is a final order or judgment, there are no "hard and fast rules." Rather, every case must be decided on its own facts. See *Millies v. Millies* (1976), 47 Ohio St.2d 43, 44, 1 O.O.3d 26, 26–27, 350 N.E.2d 675, 676. However, the document purporting to be a judgment entry must disclose the present intention of the court to terminate the action and should contain a sufficiently definitive formal statement indicating such an intention. *Peters v. Arbaugh* (1976), 50 Ohio App.2d 30, 4 O.O.3d 17, 361 N.E.2d 531; see, also, *Shore v. Chester* (1974), 40 Ohio App.2d 412, 69 O.O.2d 368, 321 N.E.2d 614 (stating that an order not readily identifiable as a judgment entry but arguably intended as an announcement of the court's decision is not a judgment). Furthermore, a document in the nature of a decision, opinion, or ruling which directs the prevailing party to prepare a journal entry consistent with the court's reasoning is not a final order. See *Millies, supra; Gibson v. Gibson* (1993), 87 Ohio App.3d 426, 433–434, 622 N.E.2d 425, 429–430; *Production Credit Assn. v. Hedges* (1993), 87 Ohio App.3d 207, 210, 621 N.E.2d 1360, 1362, fn. 2. Additionally, "the label or title placed on a document is not by itself determinative that the document is, in fact, a judgment entry." *St. Vincent Charity Hosp. v. Mintz* (1987), 33 Ohio St.3d 121, 123, 515 N.E.2d 917, 918.

Applying the foregoing principles to the "Decision and Order" in the case *sub judice*, we find that the entry was not intended as the final order of the court. Although the court's "Decision and Order" of January 27, 1997 essentially disposed of the case, it contained a directive to appellees' counsel to prepare a judgment entry. The court, therefore, failed to manifest a present intention to accord finality to its decision, and, hence, the decision was subject to revision or reconsideration at any time prior to the entry of final judgment. See *Pitts v. Dept. of Transp.* (1981), 67 Ohio St.2d 378, 379, 21 O.O.3d 238, 239, 423 N.E.2d 1105, 1106, fn. 1. The lack of finality accorded to the January 27, 1997 entry is further evidenced by the court's second entry of March 31, 1997 adopting its January 27, 1997 as the final judgment. We find, therefore, "none of the usual indicia which demonstrate" that the court intended the entry to be final. *Millies*, 47 Ohio St.2d at 45, 1 O.O.3d at 27, 350 N.E.2d at 677. Rather, "[b]oth the form of the order and the circumstances surrounding its issuance indicate that a more formal entry was to follow." *Id.*

which he could be relieved existed. In such a situation, courts generally hold that the prematurely filed "motion for relief" from the interlocutory order should be treated as a motion for reconsideration. See *Mulford v. Columbus & S. Elec. Co.* (Jan. 12, 1994), Athens App. No. 1548, unreported, 1994 WL 11426; *In re Estate of Horowitz* (Mar. 31, 1993), Trumbull App. No. 92–T–4710, unreported, 1993 WL 150487; *Lozon v. Malloy* (Nov. 24, 1992), Franklin App. No. 92AP–449, unreported, 1992 WL 356232; *Wolnitzek v. Bean* (May 23, 1988), Montgomery App. No. 10787, unreported, 1988 WL 55558. As we stated in *Mulford, supra:*

"Motions for relief from judgment are permitted by rule only with respect to *final* judgments. It is well settled that a premature Civ.R. 60(B) motion for relief from an interlocutory order is to be considered a 'motion to reconsider' a non-final order." (Emphasis *sic*; citations omitted.) See, also, *Pitts*, 67 Ohio St.2d at 379, 21 O.O.3d at 239, 423 N.E.2d at 1106, fn. 1 (stating that "a motion for reconsideration [is] the proper procedural vehicle for obtaining relief after interlocutory orders").

We will, therefore, construe appellant's "motion for relief from judgment" as a motion for reconsideration.[5]

 Appellant asserts that the trial court should have reconsidered its decision granting appellees' motion for summary judgment in light of appellant's untimely filed opposition materials.[6] Appellant contends that the excusable neglect and inadvertence of his counsel resulted in the untimely filing of his memorandum in opposition to the summary judgment motion. Specifically, appellant alleges that his counsel' s neglect to timely respond to the motion was excusable, because (1) appellant's counsel "took affirmative actions to comply with

---

5. We note that, ordinarily, a decision or order concerning a motion to reconsider is itself an interlocutory order and, hence, not a final appealable order. See *Wolford v. Newark City School Dist. Bd. of Edn.* (1991), 73 Ohio App.3d 218, 596 N.E.2d 1085; *Pinson v. Triplett* (1983), 9 Ohio App.3d 46, 9 OBR 49, 458 N.E.2d 461; see, also, *State v. Huff* (Jan. 31, 1994), Scioto App. No. 2118, unreported, 1994 WL 43734 (Stephenson, J., concurring) ("[W]hen an order is not a final appealable order, the order declining to vacate that order is not a final appealable order."). When the trial court enters a final judgment, the interlocutory order becomes appealable. See *Cincinnati Gas & Elec. Co. v. Pope* (1978), 54 Ohio St.2d 12, 8 O.O.3d 7, 374 N.E.2d 406; Whiteside, Ohio Appellate Practice (1996) 47, Section 2.20.

 In the case at bar, the trial court's March 31, 1997 judgment determined the action and prevented further judgment. The court's judgment implicitly denied appellant's motion for "reconsideration." After March 31, 1997, a Civ.R. 60(B) motion for relief from judgment would have been proper. Thus, the April 8, 1997 order purporting to deny appellant's "motion for relief" was unnecessary and does not affect our resolution of the instant appeal.

6. We recognize that appellant asserts Civ.R. 60(B)(1) grounds in support of his argument that the trial court should have reconsidered its decision granting appellees' motion for summary judgment. Our review, therefore, will focus upon whether the trial court abused its discretion in declining to find that appellant's failure to timely respond to the motion for summary judgment constituted excusable neglect. See discussion below.

the rules of the court," and (2) appellant's counsel did not "exhibit a disregard for the judicial system."

Appellees, on the other hand, contend that appellant's counsel's neglect was inexcusable. First, appellees argue, appellant's counsel admittedly received notice of the non-oral hearing date, but failed to read it. Appellees insist that appellant's counsel's failure to read the notice does not rise to the level of excusable neglect. Second, appellees claim that counsel's attempt to locate a local rule regarding response dates for summary judgment and reliance upon retired Judge Cox's statement does not negate counsel's inexcusable neglect in failing to read the notice of non-oral hearing, especially because Civ.R. 56(C) provides the deadline for filing materials relating to a motion for summary judgment. Third, appellees maintain that counsel's suggestion that the trial court should have continued the trial date on its own motion is inappropriate.[7]

We recognize that a trial court has plenary power in entertaining a motion for reconsideration prior to entering a final judgment. A reviewing court, therefore, should not reverse a trial court's judgment absent an abuse of discretion. See *Picciuto v. Lucas Cty. Bd. Commrs.* (1990), 69 Ohio App.3d 789, 796, 591 N.E.2d 1287, 1292. An abuse of discretion connotes more than an error of law or judgment. Rather,

"[t]he term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1252.

Thus, an abuse of discretion will not be found when the reviewing court simply could maintain a different opinion were it deciding the issue *de novo*. Rather, an abuse of discretion indicates an attitude that is unreasonable, arbitrary, or unconscionable. *AAAA Enterprises, Inc. v. River Place Community Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601. Upon our review of the record in the case *sub judice,* we conclude that the trial court did not abuse its discretion.

---

7. In their brief before this court, appellees state as follows:

"It is inappropriate for counsel to claim that [the trial judge] should have changed the Non–Oral Hearing date on the Summary Judgment Motion because [appellant's attorneys] were busy. In fact, there was no indication to [the trial judge] by either of [appellant's] counsel that they had not prepared and would not file a written response to the Motion for Summary Judgment."

Although "[t]he term 'excusable neglect' is an elusive concept" that courts often find difficult to define and to apply, *Kay v. Marc Glassman, Inc.* (1996), 76 Ohio St.3d 18, 20, 665 N.E.2d 1102, 1105, the cases discussing excusable neglect reveal some general principles.[8] First, many cases characterize the type of conduct that does not constitute excusable neglect. Inaction of a party that can be labeled as a "complete disregard for the judicial system" constitutes inexcusable neglect. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 153, 1 O.O.3d 86, 90, 351 N.E.2d 113, 117. Additionally, attorney conduct falling "substantially below what is reasonable under the circumstances" constitutes inexcusable neglect. *Id.*, 47 Ohio St.2d at 152, 1 O.O.3d at 89–90, 351 N.E.2d at 117. Second, a majority of the cases finding excusable neglect also have found unusual or special circumstances that justified the neglect of the party or attorney.[9] Other cases, however, despite the presence of special or unusual circumstances, declined to find excusable neglect. The cases generally suggest that if the party or his attorney could have controlled or guarded against the happening of the special or unusual circumstance, the neglect is not excusable.[10] Third, excusable neglect may exist when a party has neither

---

**8.** Black's Law Dictionary (6 Ed.1990) 566, provides the following general definition of "excusable neglect":

"In practice, * * * this means a failure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident, or reliance on the care and vigilance of his counsel or on promises made by the adverse party."

**9.** *Kay, supra* (attorney did not file answer timely due to office reorganization); *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 18 O.O.3d 442, 416 N.E.2d 605 (by properly postmarked letter, attorney referred matter to insurance carrier notifying carrier that action was required within twenty–eight days; the letter was lost in mail); *Perry v. G.M.C.* (1996), 113 Ohio App.3d 318, 680 N.E.2d 1069 (corporate employee sent complaint to wrong department, thus preventing proper corporate official from responding to complaint prior to entry of default judgment); *McGee v. C & S Lounge* (1996), 108 Ohio App.3d 656, 671 N.E.2d 589 (confusion created between insurance carrier and defendant resulted in default judgment rendered against defendant); *Bluffs of Wildwood Homeowners' Assn. v. Dinkel* (1994), 96 Ohio App.3d 278, 644 N.E.2d 1100 (personal and family illness may constitute excusable neglect); *Hopkins v. Quality Chevrolet, Inc.* (1992), 79 Ohio App.3d 578, 607 N.E.2d 914 (failure to deliver complaint and summons to proper corporate authority may constitute excusable neglect); *Mid–America Acceptance Co. v. Lightle* (1989), 63 Ohio App.3d 590, 579 N.E.2d 721 (attorney, who was in the process of changing secretaries, had received notice of trial date, but the staff failed to note the date on the calendar); *GMAC v. Deskins* (1984), 16 Ohio App.3d 132, 16 OBR 140, 474 N.E.2d 1207 (plaintiff's reliance upon defense counsel's statement to "forget it" [the complaint] constitutes excusable neglect); *Brenner v. Shore* (1973), 34 Ohio App.2d 209, 211, 63 O.O.2d 373, 374, 297 N.E.2d 550, 551 (severe emotional strain resulting in hospitalization for "complete physical and mental collapse").

**10.** *Caruso–Ciresi, Inc. v. Lohman* (1984), 5 Ohio St.3d 64, 5 OBR 120, 448 N.E.2d 1365 (unexplained failure to answer not excusable neglect); *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 514 N.E.2d 1122 (doctor's secretary informed insurance carrier of lawsuit; insurance carrier never called back; secretary forgot; fifty-one days later doctor files answer); *D.G.M.,*

knowledge nor actual notice of the lawsuit.[11] Finally, the demands of being a busy lawyer or of being preoccupied with other litigation generally do not constitute excusable neglect.[12]

In the case *sub judice*, we do not believe that the trial court abused its discretion in determining that appellant failed to demonstrate excusable neglect. We find no special or unusual circumstances that exist to support a finding of excusable neglect. Appellant received actual notice of the non-oral hearing date. The trial court reasonably could have classified appellant's attorneys' failure to read the notice and failure to request additional time within which to respond prior to the deadline as "mere neglect" [13] as opposed to excusable neglect.

An examination or the Ohio Supreme Court's most recent decision concerning this issue, *Kay, supra*, supports the conclusion that appellant failed to establish

---

*Inc. v. Cremeans Concrete & Supply Co., Inc.* (1996), 111 Ohio App.3d 134, 675 N.E.2d 1263 (congressional candidate who admittedly received notice of suit but was preoccupied with election failed to respond to complaint); *Morgan Adhesives Co. v. Sonicor Instrument Corp.* (1995), 107 Ohio App.3d 327, 668 N.E.2d 959 (although corporation claimed that it had not received proper notice of lawsuit, corporation was aware of pending lawsuit); *Internatl. Lottery, Inc. v. Kerouac* (1995), 102 Ohio App.3d 660, 657 N.E.2d 820 (out-of-state attorney received notice of trial or default and failed to appear; not entitled to preferential treatment concerning procedural rules and time limits); *Katko v. Modic* (1993), 85 Ohio App.3d 834, 621 N.E.2d 809 (ignorance of law not excusable neglect); *Whitt v. Bennett* (1992), 82 Ohio App.3d 792, 613 N.E.2d 667 (attorney failed to attend dismissal hearing after receiving proper notice); *Brown v. Akron Beacon Journal Publishing* (1991), 81 Ohio App.3d 135, 610 N.E.2d 507 (out-of-state attorney's failure to file opposition to summary judgment within time prescribed by local rules not excusable neglect); *Fouts v. Weiss–Carson* (1991), 77 Ohio App.3d 563, 566, 602 N.E.2d 1231, 1233 (allegations of emotional distress due to pending divorce and of seeking psychiatric assistance not excusable neglect in absence of "operative facts"); *Manson v. Gurney* (1989), 62 Ohio App.3d 290, 575 N.E.2d 492 (failure to respond to complaint due to "layperson" status insufficient to rise to level of excusable neglect).

**11.** See *Moore v. Emmanuel Family Training Ctr.* (1985), 18 Ohio St.3d 64, 18 OBR 96, 479 N.E.2d 879 (attorney did not receive notice of and did not have actual knowledge of discovery order; error was between court and counsel); *Doddridge v. Fitzpatrick* (1978), 53 Ohio St.2d 9, 7 O.O.3d 5, 371 N.E.2d 214 (party had neither actual notice nor actual knowledge of pending litigation); *Miami Sys. Corp. v. Dry Cleaning Computer Sys. Inc.* (1993), 90 Ohio App.3d 181, 628 N.E.2d 122 (lack of notice of default judgment motion); *Weaver v. Colwell Fin. Corp.* (1992), 73 Ohio App.3d 139, 596 N.E.2d 617 (trial court's failure to deliver proper notice of trial date).

**12.** *Lepkowski v. United States Dept. of Treasury* (C.A.D.C.1986), 804 F.2d 1310 ("demands of being a busy lawyer"); *Solaroll Shade Shutter Corp. v. Bio–Energy Sys.. Inc.* (C.A.11, 1986), 803 F.2d 1130 (attorney's negligent failure to respond to a motion does not constitute excusable neglect, even if that attorney is preoccupied with other litigation).

**13.** Black's, *supra*, at 1032, offers the following definition of "neglect":
 "May mean to omit, fail, or forbear to do a thing that can be done, or that is required to be done, but it may also import an absence of care or attention in the doing or omission of a given act. And it may mean a designed refusal, indifference, or unwillingness to perform one's duty."

excusable neglect. In *Kay*, appellant's attorney received a copy of a complaint and prepared an answer, but failed to file the answer in a timely manner. The attorney gave the answer to his secretary for mailing. His secretary, in addition to performing her normal duties, also was helping with the bookkeeping system. Due to the confusion created, the secretary failed to place the answer in the mail and instead placed it back in the file drawer.

The Supreme Court found that such facts warranted a finding of excusable neglect. The attorney "explained that the failure to file the answer stemmed from the reorganization of the firm's accounting system and was simply an isolated incident and not an ongoing concern." *Kay*, 76 Ohio St.3d at 20, 665 N.E.2d at 1105.

In the case *sub judice*, no allegations have been made that appellant's attorneys regularly fail to timely respond to motions or pleadings. However, appellant's attorneys have not alleged such disruptive circumstances within their office as to cause the case at bar to fall squarely within *Kay*. Rather, appellant's attorneys allege that due to their preoccupation with another case, they failed to read the trial court's notice. We do not believe that being preoccupied with other litigation and failing to read a court-issued notice constitute such disruptive circumstances as to rise to the level of excusable neglect as contemplated in *Kay*.

As a final matter, we emphasize that our resolution of appellant's first and second assignments of error primarily turns upon the abuse-of-discretion standard of review. As the court succinctly stated in *McGee v. C & S Lounge* (1996), 108 Ohio App.3d 656, 661, 671 N.E.2d 589, 593:

"Discretion necessarily connotes a wide latitude of freedom of action on the part of the trial court, and a broad range of more or less tangible or quantifiable factors may enter into the trial court's determination. Simply put, two trial courts could reach opposite results on roughly similar facts and neither be guilty of an abuse of discretion."

While the members of this court may have reached a different result, we cannot say that the trial court's decision constituted an abuse of its discretion.

Accordingly, we overrule appellant's first and second assignments of error.

### III

As our determination of appellant's first and second assignments of error are dispositive of the instant appeal, we find that appellant's third assignment of error is rendered moot. See App.R. 12(A)(1)(c).

Accordingly, we affirm the judgment of the trial court.

*Judgment affirmed.*

STEPHENSON, P.J., concurs.

HARSHA, J., concurs in judgment only.