OPINION
{¶ 1} This case began when Plaintiff-Appellee, Steven McHenry, sued his ex-wife, Jeannie McHenry, for $53,000. Steven and Jeanie were divorced in 1992, but lived together between 1994 and 1998. While they lived together, Jeannie purchased a 290 Sea Ray boat for $53,000 (in 1995). That boat was subsequently traded in to purchase a 1995 330 Sea Ray. The new boat was titled in Jeannie's name only, and was valued at about $122,000. Steven carried a $60,000 loan on the 330 Sea Ray and made the loan payments.
 {¶ 2} The parties separated again in July, 1998. On July 1, 1998, Steven gave Jeannie a check for $53,000, and noted on the check that the payment was for Jeannie's interest in the 330 Sea Ray. According to the complaint that was filed in the present case, Jeannie never signed over the title to the new boat. Apparently, Steven continued to use the boat and also continued to make payments on the loan.
 {¶ 3} After the parties separated in 1998, Jeannie sought an increase in the spousal support that had been awarded in the 1992 divorce decree. During the spousal support modification proceedings, Jeannie's attorney told Steven not to use the boat anymore. Steven also received notice in September, 1999, that the remaining amount of the note on the boat had been paid off. This indicated that the boat had been sold to a third party. Steven then sued Jeannie on March 28, 2002, for the $53,000 that he had given her for the boat. In the complaint, Steven alleged conversion, breach of contract, and unjust enrichment.
 {¶ 4} At the time Steven filed the conversion complaint, the spousal support modification proceedings were ongoing. In fact, Jeannie was given a copy of the conversion complaint on April 4, 2002, when she appeared for her deposition in the support proceedings. Her attorney for the support proceedings is the one who handed her the complaint. However, Jeannie had not yet retained him to represent her in the new case. Jeannie indicated that she did not have time to consult with her attorney because she was given the paperwork about five minutes before going into her deposition. She did not read the papers and assumed they had something to do with the spousal support case.
 {¶ 5} Jeannie lived in Florida when her deposition was held. However, she had returned to Ohio about three weeks before to care for a friend, Ann, who had cancer. On April 5, Jeannie was also personally served at Ann's house with a copy of the conversion complaint. Ann answered the door that day, and called Jeannie over. At the time, Ann and Jeannie had been in the middle of a discussion in another room. Jeannie signed for the papers, handed them to Ann, and left later that afternoon to return to Florida. Jeannie testified that she did not know what had happened to the papers thereafter. She did not think anything more about the papers until she received the default judgment. She then called her attorney immediately and asked him to contact opposing counsel or the court to correct the problem.
 {¶ 6} The default judgment was granted on May 8, 2003. Jeannie's attorney contacted opposing counsel within one week after judgment was entered to see if he could obtain leave to file an answer. When that tactic was unsuccessful, the motion for Civ. R. 60(B) relief was filed on June 25, 2002. The matter was referred to a magistrate, who conducted an evidentiary hearing in which most of the above facts were elicited. On the merits of the case, Jeannie testified that the new boat was a gift to her and that Steven had promised to repay her the $53,000 for the boat that had been traded. However, Steven also testified and he denied making any gifts.
 {¶ 7} Subsequently, the magistrate filed a decision granting relief from judgment. Steven filed objections, and the trial court then overruled the magistrate's decision and denied the motion for relief from judgment. Specifically, the trial court found that Jeannie failed to establish excusable neglect. The court noted that Jeannie received personal notice of the complaint on two occasions while visiting in Ohio, and that her failure to respond showed a "complete disregard for the judicial system."
 {¶ 8} Jeannie now appeals, contending in a single assignment of error that: "[t]he trial court abused its discretion by overruling the Magistrate's decision and denying Appellant's motion for relief under Civ. R. 60(B)." After reviewing the record, we find no abuse of discretion, and will affirm the trial court's decision.
 {¶ 9} "To prevail on a Civ. R. 60(B) motion, a party must show that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ. R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." GTE Automatic Elec., Inc. v. ARC Industries, Inc.
(1976), 47 Ohio St.2d 146, 351 N.E.2d 113, paragraph two of the syllabus. We review Civ. R. 60(B) decisions for abuse of discretion. Strack v. Pelton, 70 Ohio St.3d 172, 174,637 N.E.2d 914, 1994-Ohio-107. This means that the trial court's attitude must have been arbitrary, capricious, or unreasonable. See, e.g., State v. Adams (1980), 62 Ohio St.2d 151, 157-158.
 {¶ 10} In the present case, the trial court found that Jeannie satisfied the first and third prongs of the GTEAutomatic Elec. test. However, the court also concluded that the second prong was not satisfied because Jeannie's neglect was not excusable because it demonstrated a complete disregard for the judicial system. This finding refers to Kay v. Marc Glassman,
Inc., 76 Ohio St.3d 18, 1996-Ohio-430, in which the Ohio Supreme Court noted that:
 {¶ 11} "`excusable neglect' is an elusive concept which has been difficult to define and to apply. Nevertheless, we have previously defined `excusable neglect' in the negative and have stated that the inaction of a defendant is not `excusable neglect' if it can be labeled as a `complete disregard for the judicial system.'" Id. at 20 (citations omitted). The presence of excusable neglect is "`determined from all the surrounding facts and circumstances.'" Boston v. Parks Boston, Franklin App. No. 02AP-1031, 2003-Ohio-4263, at ¶ 18 (citation omitted). In Boston, the Tenth District Court of Appeals stated that "[e]xcusable neglect is not present if the party seeking relief could have prevented the circumstances from occurring. * * * `Many cases which have found excusable neglect have recognized special or unusual circumstances that justified the neglect of the attorney.'" Id. Accord, Vanest v. Pillsbury Co. (1997),124 Ohio App.3d 525, 536 (noting that "[t]he cases generally suggest that if the party or his attorney could have controlled or guarded against the happening of the special or unusual circumstance, the neglect is not excusable.")
 {¶ 12} In the present case, Jeannie relies on the "special circumstance" of her friend's illness. Severe illness can be a compelling reason for failing to comply with time requirements.Yuhanick v. Cooper (Nov. 16, 1998), Columbiana App. No. 96-CO-45, 1998 WL 811355, *5. However, Jeannie was not the person who was ill. Furthermore, Jeannie already had an attorney, who could have handled any paperwork on her behalf. Compare AndrewBihl Sons, Inc. v. Trembly (1990), 67 Ohio App.3d 664, 667
(rejecting excusable neglect where the defendant claimed a heart attack made him too ill to personally deal with business. Among other things, the court noted that the defendant could have delegated his affairs to a competent agent). Similarly, excusable neglect was rejected where an appellant claimed she was emotionally distraught over a pending divorce, requiring her to seek medical leave and psychiatric counseling. In this regard, the court stressed that there were no operative facts "as to the severity of * * * [appellant's] mental condition or whether her condition would have rendered her incompetent for purposes of receiving service or comprehending her legal obligations." Foutsv. Weiss-Carson (1991), 77 Ohio App.3d 563, 566.
 {¶ 13} Jeannie does not suggest, nor did she prove that she was either incompetent or unable to understand her legal obligations. To the contrary, Jeannie was given actual notice of the complaint on two occasions. She could easily have prevented a default judgment by simply reading and attending to the papers she received.
 {¶ 14} Accordingly, the trial court did not abuse its discretion in denying the motion for relief from judgment. The single assignment of error is, therefore, overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Fain, P.J., and Young, J., concur.