OPINION *Page 2 
{¶ 1} Defendant-Appellant, Scott A. Forman, appeals the judgment of the Marion County Court of Common Pleas, Family Division, granting Plaintiff-Appellee's, Evelyn D. Forman, motion for relief from judgment and ordering that division of Scott's state teacher's retirement benefits be calculated using the coverture method. On appeal, Scott asserts that the trial court erred by granting Evelyn's motion for relief from judgment because it was untimely; because the terms of the divorce decree were unambiguous; because the trial court lacked jurisdiction to modify the division of property; and, because the resulting property division was inequitable. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} Scott and Evelyn were married in July 1984 and have two children born as issue of the marriage.
 {¶ 3} In October 2001, Evelyn filed for divorce.
 {¶ 4} In January 2003, the trial court issued the divorce decree, in which the parties stipulated that Scott would be the residential parent; that as a setoff against any claim for spousal support, neither party would pay child support; that Scott would claim the children for tax dependency purposes; and, to the present valuation of Scott's retirement account with the state teacher's retirement system (hereinafter referred to as "STRS") and Evelyn's Social Security setoff. The trial *Page 3 
court also awarded the marital property to Scott and designated responsibility of the mortgage to him. After setoff of Evelyn's net assets against Scott's net assets, the trial court determined that a difference of $176,493.77 existed in favor of Scott and that Scott owed Evelyn $88,246.88 in order to equalize the property distribution. Finding that Scott bore most of the marital debt, there were very little liquid cash assets, but there was some equity in the marital property, the trial court ordered that Scott pay Evelyn $30,000 within 180 days of the judgment entry and that the remaining $58,296.88 be divided from Scott's STRS account by a Division of Property Order (hereinafter referred to as "DOPO"). In doing so, the trial court provided that Evelyn "shall be awarded the sum of $58,296.88 from [Scott's] STRS [account] by a [DOPO]" prepared by Evelyn's counsel. (Jan. 2003 Divorce Decree, p. 19).
 {¶ 5} In January 2004, Evelyn moved for relief from judgment under Civ.R. 60(B), requesting that the trial court add language reserving jurisdiction regarding its order to divide Scott's STRS benefits in the divorce decree.
 {¶ 6} In February 2005, the trial court held a hearing on Evelyn's motion for relief from judgment. At the hearing, Brian Hogan, Evelyn's expert on preparing actuarial present values of retirement benefits, drafting DOPOs, and reviewing DOPOs, testified that his employer, Kelley, Shulman Company,[1] *Page 4 
recommends use of the coverture method to divide retirement benefits; that the purpose of using the coverture method is to give the non-participant spouse, or alternate payee, a share of the interest; that, under the coverture method, the alternate payee receives a percentage of the marital portion, or coverture fraction, of the participant's total amount of benefits at the time of retirement; that the percentage is determined by dividing the alternate payee's interest by the present value of the participant's retirement; that the coverture fraction is calculated by dividing the number of years in the plan while married by the total number of years in the plan at the time of retirement; and, that, as the participant continues to work and accrue a larger pension, the denominator of the coverture fraction increases, and the alternate payee "receives a smaller fraction of a larger piece of the pie at the time that [the benefits are] paid out." (Hearing Tr., p. 37).
 {¶ 7} Hogan also testified that other methods for dividing pensions existed, such as the frozen method and the frozen coverture method, which is a hybrid of the frozen and coverture methods; that, under the frozen method, the alternate payee's benefit is determined as of a certain point in time, such as a divorce, is a fixed dollar amount, and the alternate payee would not receive any of the interest on the amount between the time the amount was determined and the time it was paid out; that he only uses the frozen method when a court clearly indicates it should be used; that his employer recommended the coverture *Page 5 
approach based upon prevailing case law in Ohio, especially the decision in Hoyt v. Hoyt (1990), 53 Ohio St.3d 177; that Hoyt can apply to any situation involving a defined benefit plan; and, that STRS is a defined benefit plan.
 {¶ 8} Hogan further explained that the DOPO forms are set forth by statute and specifically detail a percentage approach as an option for dividing a STRS account; that a DOPO form requires two selections to be made regarding the alternate payee: (1) the type of payment and (2) the method of payment; that the type of payment section provides options for a lump sum, a monthly annuity, or a partial lump sum and monthly annuity; that the participant selects the type of payment at the time of retirement and the alternate payee must receive the same type of payment as the participant; that the method of payment section requires specification of either a dollar amount (frozen method) or a percentage (coverture method); that, if the frozen method is used, the fixed dollar amount must be denoted on the form; that, if the coverture method is used, the percentage of the amount the alternate payee will receive, as well as the numerator of the coverture fraction, must be denoted on the form; that the language in the divorce decree was unclear regarding which method of payment should be used to divide Scott's STRS account; that he could not prepare a DOPO based on the divorce decree without clarification; and, that, under STRS, benefits cannot be withdrawn until a *Page 6 
participant reaches retirement age or terminates employment and applies for a refund of contributions.
 {¶ 9} On cross-examination, Hogan testified that, while the trial court ordered Evelyn to receive the specific amount of $58,296.88 from Scott's STRS account, the language in the divorce decree did not utilize "clear coverture language" or "clear frozen language" to indicate which method of payment should be used (hearing tr., p. 65); thatHoyt involved the General Motors pension fund and did not reference a DOPO; and, that STRS is a statutory creation and governed by statute.
 {¶ 10} Scott did not present any evidence at the hearing.
 {¶ 11} In March 2005, the trial court issued its judgment entry, in which it granted Evelyn's motion for relief from judgment pursuant to Civ.R. 60(B)(1) and ordered that Scott's STRS benefits be divided using the coverture method. In doing so, the trial court noted that the divorce decree "was silent with respect to" the issue of how Scott's STRS should be divided, providing:
 To clarify, it was the intention of the Court to divide the property fairly and equitably. In doing so the Court expressed in terms of present day value [Evelyn's] share of [Scott's] STRS. The Court failed to provide in the [divorce decree] how the [DOPO] should be prepared. To award [Evelyn] a lump sum that may not be available to her for a period of 15-20 years in today's dollars is unfair. For example if [Evelyn] had been awarded her $58,000.00 in cash she would have the next 15-20 years to invest those funds. It would be expected that the *Page 7 amount would exceed $58,000.00 in 15-20 years if wisely invested.
 The Court finds that STRS is subject to division pursuant to a [DOPO] as provided under Ohio Revised Code Section 3105.80-90. The coverture or percentage formula provided for in the [DOPO] provides for proportionate growth under the STRS retirement plan. "In determining the proportionality of the pension or retirement benefits, the non-employed spouse in most instances, is only entitled to sharing the actual marital asset. The value of this asset would be determined by computing the ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment." See Hoyt v. Hoyt at 182.
 In this case the percentage amount is 35.93%, which is [Evelyn]'s interest of $58,296.88 divided by the present value of [Scott]'s pension which is $162,234.30. The marital portion or the numerator of the coverture fraction is 18.5, the number of years during which [Scott] was both a member of the [STRS] plan and married to the [non-participant spouse Evelyn] . * * *
 The parties agreed that Court (sic.) shall reserve jurisdiction in order to facilitate law changes and to accommodate [Scott's] selection of benefits and events that may occur and thereby allow the Court to effectuate its judgment.
(March 2005 Judgment Entry, pp. 4-6).
 {¶ 12} Thereafter, Scott appealed to this Court, but we dismissed his appeal for lack of a final appealable order because the DOPO had yet to be filed pursuant to the January 2003 divorce decree and the March 2005 judgment entry. See Forman v. Forman, 3d Dist. No. 9-05-14,2006-Ohio-11, ¶¶ 3-4 (hereinafter referred to as "Forman I").
 {¶ 13} In November 2006, Evelyn filed the DOPO utilizing the coverture method, which the trial court approved. *Page 8 
 {¶ 14} It is from the November 2006 DOPO and March 2005 judgment entry that Scott appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY GRANTING PLAINTIFF'S 60(B) MOTION WHICH WAS NOT TIMELY FILED.
 Assignment of Error No. II THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY GRANTING PLAINTIFF'S MOTION BECAUSE THE TERMS OF THE DIVORCE DECREE WERE NOT AMBIGUOUS.
 Assignment of Error No. III THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY GRANTING PLAINTIFF'S MOTION BECAUSE THE COURT LACKED JURISDICTION TO MODIFY THE DIVISION OF PROPERTY.
 Assignment of Error No. IV THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY GRANTING PLAINTIFF'S MOTION BECAUSE THE RESULTING PROPERTY DIVISION WAS INEQUITABLE.
 {¶ 15} Due to the nature of Scott's assignments of error, we elect to address his first, second, and third assignments of error together. *Page 9 
 Assignments of Error Nos. I, II, III {¶ 16} In his first assignment of error, Scott asserts that the trial court erred by granting Evelyn's Civ.R. 60(B) motion because it was not timely filed. In his second assignment of error, Scott asserts that the trial court erred by granting Evelyn's Civ.R. 60(B) motion because the terms of the divorce decree were not ambiguous. In his third assignment of error, Scott asserts that the trial court erred by granting Evelyn's 60(B) motion because it lacked jurisdiction to modify the division of property. We disagree.
 {¶ 17} Under Civ.R. 60(B), "the court may relieve a party * * * from a final judgment, order, or proceeding" for various reasons. Thus, by its own terms, Civ.R. 60(B) applies only to final judgments, orders, or proceedings. Vanest v. Pillsbury Co. (1997), 124 Ohio App.3d 525, 532
(citations omitted). Accordingly, when a party seeks relief from a non-final or interlocutory order, a Civ.R. 60(B) motion for relief from judgment is not the appropriate mechanism for relief. Instead, the party should file a motion to reconsider. Id. at 533; Pitts v. Dept. ofTransp. (1981), 67 Ohio St.2d 378, 380, fn1; Findlay FordLincoln-Mercury v. Huffman, 3d Dist. No. 5-02-67, 2004-Ohio-541, ¶ 31 ("a motion for reconsideration would be the proper procedural vehicle for obtaining relief after interlocutory orders"). Thus, when a premature motion for relief from judgment is *Page 10 
filed after an interlocutory order, the court should treat it as a motion for reconsideration. Vanest, 124 Ohio App.3d at 534 (citations omitted).
 {¶ 18} Here, Evelyn moved for relief from judgment under Civ.R. 60(B) in January 2004. At that time, the DOPO had not yet been filed as directed by the trial court in its January 2003 divorce decree. Consequently, the divorce decree was interlocutory and no judgment from which Evelyn could be relieved existed when she filed her Civ.R. 60(B) motion; therefore, as we noted in Forman I, her motion was premature.2006-Ohio-11, ¶ 3; see also Pitts, 67 Ohio St.2d at 380, fn1. Therefore, we must treat Evelyn's motion for relief from judgment as a motion for reconsideration.
 {¶ 19} Civ.R. 54(B) allows for reconsideration of an interlocutory order, and provides, in pertinent part, that the order "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."
 {¶ 20} Here, the January 2003 divorce decree was not final until the DOPO was filed and approved in November 2006. Thus, until the DOPO was entered, the trial court was free to revise or clarify the contents of the DOPO and the judgment entry that ordered it, Scott v. Scott, 3d Dist. No. 1-99-79, 2000-Ohio-1636, which it chose to do in its March 2005 judgment entry. Consequently, given the divorce decree was an interlocutory order which the trial court could revise or *Page 11 
clarify at any time, the issues of whether Evelyn timely filed her motion, whether the language in the divorce decree was ambiguous, and whether the trial court reserved jurisdiction to modify the final divorce decree are irrelevant. Therefore, we find that the trial court had the authority to clarify in its March 2005 judgment entry which method of payment should be used to divide Scott's STRS account to effectuate the divorce decree.
 {¶ 21} Accordingly, we overrule Scott's first, second, and third assignments of error.
 Assignment of Error No. IV {¶ 22} In his fourth assignment of error, Scott asserts that the trial court erred in granting Evelyn's motion because the resulting property division was inequitable. Specifically, Scott contends that the trial court's order to use the coverture method requires economic entanglement of the parties in violation of Hoyt; that the parties stipulated to the present valuation of his STRS account, not coverture ratios; and, that it was inequitable for the trial court to change any aspect of the property division because he was allotted most of the marital debt and received no child support. We disagree.
 {¶ 23} Pension or retirement benefits accumulated during a marriage are considered marital property and are subject to division in a divorce action. Helgeson v. Helgeson (2000), 3d Dist. No. 8-2000-12,2000 WL 1706385, citing *Page 12 Erb v. Erb (1996), 75 Ohio St.3d 18, 20, and Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 132. "When considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result."Hoyt, 53 Ohio St.3d at paragraph one of the syllabus. Accordingly, a trial court's distribution of pension or retirement benefits will not be disturbed on appeal absent an abuse of discretion. Id. at 180-81. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Also, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 24} Additionally, the trial court should attempt to preserve the pension or retirement asset in such a way as to maximize the benefit for each party and, where possible, should attempt to disentangle the parties' economic partnership in order to achieve finality of the marriage. Hoyt, 53 Ohio St.3d at paragraph two of the syllabus.
 {¶ 25} Here, Scott first argues that the trial court's order to use the coverture method requires economic entanglement of the parties in violation of Hoyt and relies on Cole v. Cole, 4th Dist. No. 00CA03,2000 WL 33256638, to *Page 13 
support his argument. In Cole, the Fourth District found that a trial court abused its discretion in ordering additional spousal support to the plaintiff-appellee wife in the form of one-half of the defendant-appellant husband's monthly PERS benefit. In doing so, the Fourth District explained that neither of the parties was near retirement age and may accrue additional pension benefits; that the final benefit would be based partly on the married years and partly on the post-marriage salaries; and, that Hoyt mandated disentanglement of the parties' economic interests. Thus, the Fourth District concluded that "[t]he PERS pension rights of appellant have a present value, and appellee's share also has a present value. The proper course for the trial court would have been to take evidence on the present value of the PERS pension, to determine present value, to determine appellee's share, to make an award of that amount." Id.
 {¶ 26} However, Cole is distinguishable from the case sub judice because it did not involve STRS and the issue was whether the wife should be awarded a lump sum at the time of divorce, distributed through a setoff or otherwise, or receive the amount from the husband's monthly annuity, which would require future economic entanglement. Here, the issue is not the type of payment, i.e. a current lump sum versus monthly annuity, but the method of payment, i.e. frozen or coverture. As Hogan indicated in his testimony, both methods of payment require future economic entanglement between the parties under STRS because *Page 14 
the parties cannot obtain the benefits until Scott either retires or terminates his employment and requests a refund of his contribution at some point in the future.
 {¶ 27} Moreover, to the extent Cole interprets Hoyt as absolutely forbidding economic entanglement, we respectfully disagree. InHoyt, the Ohio Supreme Court established guidelines for trial courts to follow in exercising their discretion to award pension or retirement benefits. In doing so, the Court noted that "flat rules have no place in determining a property division," Hoyt, 53 Ohio St.3d at 180, and recommended "that trial courts, when circumstances permit, should strive to resolve the issues between the parties so as to disassociate the parties from one another or at least minimize their economic partnership." Id. (emphasis added). However, the Court also acknowledged that economic disentanglement "may be the most difficult result to implement on a practical basis." Id. at 182.
 {¶ 28} Furthermore, Hoyt provided guidance on how trial courts could resolve various situations involving benefits, particularly vested, mature retirement benefits and vested, unmature retirement benefits.Hoyt explained that vested, mature retirement benefits are "currently due and payable and the value is fixed and easily ascertainable." Id. at 182. In those situations, it may be advantageous for the trial court to determine and award a present cash value to the alternate payee, preferably when substantial marital assets exist that can be offset against the alternate payee's share. Id. Conversely, vested, unmature retirement benefits *Page 15 
are not currently due and payable, and the trial court "may reserve jurisdiction and either determine the parties' proportionate shares at the time of the divorce or determine proportionality when the benefits become vested and matured." Id. In those situations, Hoyt recognized that, although "the parties' affairs are not concluded," the parties divide the risk. Notably, Hoyt provided that the alternate payee's proportion should be determined by "computing the ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment," id., which is the same calculation used in the coverture method.
 {¶ 29} Here, Scott asserts that the trial court should have divided his STRS according to its present value to avoid economic entanglement. However, his benefits are not currently due and payable. Thus, in this case, in order for Evelyn to receive her share of the STRS benefits, economic entanglement could not be avoided, regardless of the method of payment utilized. See, e.g., Helgeson, supra ("the Hoyt court also recognized that complete financial disentanglement may not be possible in every case"). The evidence also demonstrates that, aside from the marital property, the only other substantial asset was the STRS account; that the trial court ordered use of the coverture method of payment as expressly recommended by Hoyt and acknowledged that doing so would maximize the benefits to both parties; that Hogan testified that the coverture method was the *Page 16 
preferred method because it allowed for the growth of the alternate payee's share; and, that Scott offered no evidence to the contrary. Thus, we find that the trial court's order to use the coverture method of payment did not violate Hoyt and, in fact, complied with it.
 {¶ 30} Scott also argues that using the coverture method to divide his STRS account was inequitable because the parties stipulated to a present valuation of his account, not coverture ratios, and that it was inequitable for the trial court to change any aspect of the property division because he was allotted most of the marital debt and received no child support. Although Scott is correct that the parties stipulated to the present value of his STRS account, the parties did not stipulate to the method of payment of that account. Coverture ratios are relevant to the method of payment, not to determining the value of the STRS account. Thus, the parties' stipulation to the present valuation of Scott's STRS account did not preclude the trial court from designating which method of payment should be utilized in distributing the account.
 {¶ 31} Moreover, the trial court did not change the property division in its March 2005 Judgment Entry. As the trial court indicated, the divorce decree was silent regarding how the DOPO should be prepared, so the trial court clarified which method of payment should be used in its March 2005 Judgment Entry. Hogan also testified that the divorce decree was unclear as to which method of *Page 17 
payment should be used. Based on the foregoing, we find that the trial court did not err in granting Evelyn's motion for reconsideration.
 {¶ 32} Accordingly, we overrule Scott's fourth assignment of error.
 {¶ 33} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
SHAW and WILLAMOWSKI, J.J., concur.
[1] Hogan noted that Kelley, Shulman Company also operates under the names QDRO Consultants and Pension Evaluators. *Page 1