OPINION
Appellant, B-Right Trucking Company, appeals from the April 24, 2000 judgment entry of the Trumbull County Common Pleas Court, adopting the decision of magistrate Anthony M. Cornicelli ("Cornicelli"), dated March 31, 2000, in which Cornicelli concluded that appellant had breached its contract with appellee, Warfab Field Machining and Erection Corp., and rendered judgment in favor of appellee in the amount of $79,028.87.
Appellee was retained by Hobet Mining Company ("Hobet") to disassemble a Marion Power Shovel model 8200 drag line ("the drag line") located in Holden, West Virginia (the "tear-down site") and move it to a Hobet mine in Sharples, West Virginia (the "erection site"). The drag line weighs approximately nine million pounds.
In the fall of 1995, Don Williams ("Williams"), an agent of appellant, was contacted by Jeff Rebhan ("Rebhan"), the president of appellee, to see if appellant would be interested in bidding on hauling the drag line from the tear-down site to the erection site. Williams traveled to West Virginia with Dave Hall ("Hall"), a trucker frequently retained by appellant for large jobs. Hall and Williams drove the route from the tear-down site to Sharples, but did not travel to the actual erection site. Appellant eventually bid on the project and its bid was accepted by appellee.
Appellant arrived at the tear-down site during the first week of December 1995. Hall was engaged in hauling overweight "permit" loads. Due to the condition of the access road to the erection site, Hall's truck was incurring damage on each trip. Rebhan promised to reimburse Hall for the cost of his repairs. In spite of Rebhan's assurance, Hall refused to bring his truck to the tear-down site at the end of December because of his claimed problems with the access road at the erection site. At that point, appellee terminated the services of appellant.
As a result of appellant's failure to perform, appellee incurred $178,676 in trucking expenses in addition to the $7,200 advance it had paid to appellant, thereby incurring a total of $185,876 in trucking expenses, which was $87,176 greater than the cost of the $98,700 contract it had for trucking services with appellant. The magistrate determined that appellant breached its contract with appellee and awarded appellee damages in the amount of $79,028.87 ($87,176 for additional trucking expenses offset by $8,147.13 to reimburse appellant for payments it made to Hall to pay for repairs to his trailer).
The magistrate's decision was filed on March 31, 2000. Pursuant to Civ.R. 53(E)(3), appellant had fourteen days to file written objections to the decision. On April 17, 2000, three days after its objections were due, appellant filed both its objections to the magistrate's decision, and a motion for leave to file its objections on April 17, 2000. The trial court overruled the motion in an April 21, 2000 judgment entry. Because no timely objections had been filed, the trial court adopted the magistrate's decision in its aforementioned April 24, 2000 judgment entry. On April 28, 2000, appellant filed a motion to vacate and for extension of time to file objections instanter. On May 24, 2000, before the trial court ruled on its April 28 motion, appellant filed an appeal of the April 24, 2000 judgment entry. On July 5, 2000, this court remanded the matter to the trial court to rule on the April 28, 2000 motion. The trial court overruled that motion in a November 2, 2000 judgment entry.
Appellant has filed a timely appeal and makes the following assignments of error:
 "[1.] The trial court committed prejudicial error by refusing to consider B-Right's objections to the report of the magistrate.
 "[2.] The trial court committed prejudicial error by adopting the report of the magistrate as its final judgment."
 Appellant raises three issues in his first assignment of error: (1) whether appellant's objections to the magistrate's report were timely filed; (2) if appellant's objections were not timely filed, did the trial court err in overruling appellant's motion for extension of time to file objections; and (3) did the trial court err in overruling appellant's Civ.R. 60(B) motion to vacate its judgment on the ground that appellant's failure to timely file its objections to the magistrate's report was the result of excusable neglect.
To briefly reiterate, the magistrate filed his decision, in the instant matter, on March 31, 2000. Appellant did not file his objections to the magistrate's decision until April 17, 2000. Pursuant to Civ.R. 53(E)(3), objections to a magistrate's decision must be filed within fourteen days of the decision. In this case, appellant waited seventeen days to file his objections. Therefore, his objections were three days late.
Appellant suggests that Civ.R. 53(E)(3) should be read in conjunction with Civ.R. 6(E), which provides for three days to be added to a proscribed period for a party to act if notice is served upon the party by mail. This is the position that the First Appellate District adopted inCheviot v. Siciliano (June 5, 1998), Hamilton App. No. C-961039, unreported, 1998 WL 293857, at 2. We decline to adopt the reasoning of the First District in this matter.
With respect to Civ.R. 53(E)(3), the time limit for filing objections begins to run when the magistrate's decision is filed, not upon the date of service. In re: Bortmas (Oct. 15, 1999), Trumbull App. No. 98-T-0147, unreported, 1999 WL 959842, at 2. The Second Appellate District has held that because the fourteen days begin to run on the date the decision is filed and not on the date the party receives notice of the decision or is served a copy of it, Civ.R. 6(E) is not applicable.Martin v. Lesko (1999), 133 Ohio App.3d 752, 756; and Hucke v. Hucke
(Aug. 31, 1990), Montgomery App. No. 11882, unreported, 1990 WL 125700, at 2. The Third and Ninth Appellate Districts are also in accord with the holding in Martin. Pulfer v. Pulfer (1996), 110 Ohio App.3d 90, 92;Pogacsnik v. Jewett (July 29, 1992), Lorain App. No. 91CA005216, unreported, 1992 WL 181011, at 2. In view of the foregoing, we conclude that Civ.R. 53(E) should not be read in pari materia with Civ.R. 6(E), and that, consequently, appellant's objections to the magistrate's decision were not timely filed.
Appellant next asserts that, even if its objections were filed late, the trial court should have granted appellant's request for an extension of time to file the objections. Civ.R. 6(B) states:
 "When * * * an act is required * * * to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where failure to act was the result of excusable neglect * * *."
 As discussed above, appellant's objections to the magistrate's decision were due on April 14, 2000. By motion, appellant requested leave to file its objections on April 17, 2000, instead of April 14, 2000. Appellant's motion was served on April 14, 2000, which was before the expiration of the period of time for filing such objections. However, his motion was not filed until April 17, 2000, which was after the period of time for filing objections had expired.
Appellant suggests that its request for an extension of time was made before the period of time for filing objections expired because appellant served its notice on April 14, 2000. Therefore, its motion should have been considered under Civ.R. 6(B)(1) which requires only good cause shown for the court to extend the time for filing objections.
However, we are of the view that a "request" is not made of the trial court, pursuant to Civ.R. 6(B), until the trial court has received that request and that request is of record. For appellant's request to have been made part of the record, in this case, it had to be filed. We conclude that appellant did not request an extension of time for filing its objections, until its motion was filed, which occurred on April 17, 2000, three days after the period for filing objections had expired. Therefore, in order for the extension of time to be granted, appellant had to demonstrate that its failure to timely file its objections was the result of excusable neglect.
In an affidavit attached to a motion to vacate and for extension of time to file objections instanter, appellant's counsel set forth his reasons for the late filing of his objections to the magistrate's decision. He stated that: (1) he did not receive the magistrate's decision until April 3, 2000; (2) he did not know of his client's intent to object until April 10, 2000; (3) he was preparing for a discovery hearing to be held in Cleveland on April 14; and (4) he relied on the First Appellate District's holding in Cheviot in support of the proposition that he had an additional three days to file his objections.
When a party's inaction reflects a "`complete disregard for the judicial system'" that constitutes inexcusable neglect, as opposed to excusable neglect. Vanest v. Pillsbury Co. (1997), 124 Ohio App.3d 525,536, quoting GTE Automatic Elec., Inc. v. ARC Industries, Inc. (1976),47 Ohio St.2d 146, 153. Courts have found excusable neglect in the following instances: the party had neither knowledge nor notice of the pending legal action; the counsel of record was ill; and, counsel of record failed to appear for trial because he had not received notice of a new trial date. Mayor v. WCI Steel, Inc. (Mar. 16, 2001), Trumbull App. No. 2000-T-0054, unreported, 2001 WL 276976, at 2, citing Doddridge v.Fitzpatrick (1978), 53 Ohio St.2d 9, 13; The Bluffs of WildwoodHomeowners' Assn., Inc. v. Dinkel (1994), 96 Ohio App.3d 278, 281;Columbia Gas of Ohio v. Riley (1987), 38 Ohio App.3d 151, paragraph two of the syllabus. However, "the demands of being a busy lawyer or of being preoccupied with other litigation generally do not constitute excusable neglect." Vanest, 124 Ohio App.3d at 537.
Here, appellant contends that he was busy preparing for a discovery hearing. If that was in fact the case, he should have made an effort to promptly file his motion for an extension of time. Even if he did not receive notice of the magistrate's decision until April 3, 2000, he still had ample opportunity to request an extension of time. Had he timely filed his motion for an extension of time, his busy litigation schedule would likely have constituted cause shown pursuant to Civ.R. 6(B)(1). However, Civ.R. 6(B)(1) is not applicable in this case because counsel failed to file his motion prior to the expiration of the fourteen-day period for filing objections to the magistrate's decision.
As for counsel's reliance on Cheviot, the First Appellate District clearly stated in that opinion that its holding was at odds with decisions in the Second, Third, Fifth, Eighth, and Tenth Appellate Districts. Cheviot, supra, unreported, at 2. In the face of such overwhelming contrary authority, counsel's contention that his alleged reliance on Cheviot in determining when he had to file his objections to the magistrate's decision constituted excusable neglect appears to be tenuous at best.
The fact that appellant did not inform counsel of its decision to appeal the magistrate's decision until April 10, 2000, is immaterial. The fourteen days allowed for filing objections was intended to allow time for counsel to consult his client and, subsequent to such consultations, prepare objections. Presumably, a primary purpose of requiring a party to object to a magistrate's decision within fourteen days is to expedite litigation. A party's failure to give prompt attention to a magistrate's decision is precisely what the rule is intended to avoid and should not constitute grounds for evading the fourteen-day time limit. In view of the foregoing, we conclude that appellant's failure to timely object to the magistrate's decision did not constitute excusable neglect under Civ.R. 6(B)(2).
Finally, appellant asserts that the trial court improperly overruled the April 28, 2000 motion to vacate and for extension of time to file objections instanter which appellant filed pursuant to Civ.R. 60(B)(1) and (5).
For appellant to be entitled to relief under Civ.R. 60(B), it must demonstrate that: (1) it has a meritorious claim or defense to present if relief is granted; (2) it is entitled to relief for one of the reasons enumerated in Civ.R. 60(B); and (3) its motion was made within a reasonable time. GTE Automatic Elec., Inc., 47 Ohio St.2d 146 at 150. Here, appellant has failed to meet the second prong of the test.
Civ.R. 60(B) permits a court to relieve a party from a final judgment for the following reasons: "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence * * *; (3) fraud * * *, misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied * * *; or (5) any other reason justifying relief from judgment." Appellant fails to identify, in its brief, the specific ground on which it is requesting relief. We will presume from the motion filed below that appellant believes it is entitled to relief under Civ.R. 60(B)(1) or (5).
Civ.R. 60(B)(1) provides for relief from judgment if a party can demonstrate excusable neglect. As was discussed above, we do not view appellant's conduct as coming under this rubric.
As for Civ.R. 60(B)(5), the gist of appellant's argument appears to be that his motion for an extension of time was not terribly late; therefore, it should have been granted. While this court is willing to concede that appellant's behavior in this matter did not demonstrate a complete disregard of the judicial system so that the trial court would have committed an abuse of discretion in granting appellant's motion for an extension of time, at the same time, the mere fact that appellant's motion was almost timely, is not sufficient to cause the trial court's decision to overrule the motion to rise to the level of an abuse of discretion. In short, the trial court's decision to exercise its discretion to overrule appellant's motion for an extension of time did not create a situation in which appellant was entitled to relief under Civ.R. 60(B)(5). Therefore, we find no merit in appellant's contention that it was entitled to relief from judgment pursuant to Civ.R. 60(B).
For the foregoing reasons, appellant's first assignment of error lacks merit, and we conclude that he failed to timely object to the magistrate's decision. When a party fails to timely object to a magistrate's decision, Civ.R. 53(E)(3)(b) prohibits the party from assigning error on appeal based on the trial court's adoption of any finding of fact or conclusion of law contained in the that decision.State ex. rel. Booher v. Honda of Am. Mfg., Inc. (2000), 88 Ohio St.3d 52,53-54.
Appellant's second assignment of error is predicated on errors that appellant alleges are contained in the magistrate's decision and because appellant failed to timely object to that decision, appellant's second assignment of error is moot. Nevertheless, we will briefly address the merits of appellant's second assignment of error.
Appellant contends, in its second assignment of error, that the trial court committed prejudicial error in adopting the report of the magistrate as its final judgment. Appellant raises two issues with respect to the magistrate's report: first, that the magistrate should have excused appellant from performance on the contract because the access road to the erection site was not in the condition promised by appellee; second, that the magistrate should have applied the principles of quantum meruit to the case.
In connection with the first issue, appellant argues that appellee had promised that the road to the erection site would be passable, and that because Hall incurred $8,147.13 in damage to his truck while using the access road in making ten hauls, performance of the contract was impracticable. We disagree.
 "Performance may * * * be impracticable because it will involve a risk of injury to person or to property * * * that is disproportionate to the ends to be attained by performance. However, `impracticability' means more than `impracticality.' A mere change in the degree of difficulty or expense due to such causes as increased wages, prices of raw materials, or costs of construction, unless well beyond the normal range, does not amount to impracticability since it is this sort of risk that a fixed-price contract is intended to cover. Furthermore, a party is expected to use reasonable efforts to surmount obstacles to performance * * *, and a performance is impracticable only if it is so in spite of such efforts." Restatement of the Law 2d, Contracts (2000), 316, Impracticability of Performance, Section 261.
 In this case, Hall had been able to deliver a number of loads to the erection site before refusing to continue with the job. Therefore, the task at hand was clearly not beyond his capabilities or the capabilities of his truck. Further, appellee contracted the job out to another trucking company, which was able to complete the task in worse weather conditions than those in which appellant operated while on the job. Finally, Rebhan promised to reimburse Hall for the cost of any repairs to his truck.
The task confronting appellee in the relocation of the drag line was enormous. The magistrate observed in his opinion that the drag line was comparable in size to the Trumbull County Common Pleas Courthouse. As Rebhan informed Hall, when Hall complained about the damage to his truck, in the greater scheme of the entire project, the cost of those repairs amounted to "chump change."
In view of the foregoing, we find no merit in appellant's argument that the condition of the access road made performance on the contract impracticable. Appellant was capable of performing as required by the contract. Hall had delivered loads using the access road provided, and other trucking companies delivered loads using the same road after the contract between appellee and appellant was terminated. Although due to the condition of the access road, the degree of difficulty of the project may have been greater than anticipated by appellant at the time it entered into the contract, it was not so significantly greater as to make performance of the contract impracticable.
The second issue raised by appellant in his second assignment of error concerns the magistrate's decision not to apply the principles of quantummeruit to this case. Appellant contends that under the theory of quantummeruit, it is entitled to recover on invoices it submitted to appellee for services rendered for the portion of the task of hauling the drag line that it completed.
"`Quantum meruit' is generally awarded when one party confers some benefit upon another without receiving just compensation for the reasonable value of services rendered." Aultman Hosp. Assn. v. CommunityMut. Ins. Co. (1989), 46 Ohio St.3d 51, 55. In the absence of bad faith, fraud, or illegality, the doctrine is inapplicable if an express agreement existed concerning the services for which compensation is sought. Pawlus v. Bartrug (1996), 109 Ohio App.3d 796, 800.
Here, appellant had received an estimate that the drag line weighed eight million pounds and that the number of loads to be transported would be one hundred forty-two. As stated previously, Hall and Williams drove the route over which the loads were to be transported. Acting on this information, appellant submitted a bid of $98,700. Williams was told by Rebhan in November 1995, that appellant was expected on the job site at the beginning of December 1995, which clearly constituted an acceptance of appellant's bid. Although Rebhan testified that he believed the bid to be $99,800, we do not find any significance in this discrepancy since he was effectively testifying that he thought appellee owed appellant $1,100 more than appellant had bid.
"`It is basic contract law that to have an enforceable contract, there must be a meeting of the minds of the parties to the contract. * * * A valid contract must also be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term.'" McMillanv. Haueter (Apr. 30, 1999), Geauga App. No. 98-G-2124, unreported, 1999 WL 266474, at 4, citing Alligood v. Proctor Gamble Co. (1991),72 Ohio App.3d 309, 311-312. In this case, the parties to the contract were identified, appellant and appellee; the subject matter of the contract was identified, the hauling of the drag line to the erection site; and, appellant's bid for the work was accepted, with Rebhan indicating at trial that appellee was willing to pay appellant an amount slightly in excess of its bid. Therefore, we conclude that the magistrate did not err in finding that there was a contract between appellant and appellee. Because an express agreement existed between the parties, appellant was not entitled to recovery under the theory ofquantum meruit. For the foregoing reasons appellant's second assignment of error lacks merit.
The judgment of the Trumbull County Court of Common Pleas is affirmed.
PRESIDING JUDGE DONALD R. FORD, NADER, J., GRENDELL, J., concur.