**D.G.M., INC., Appellant,**

**v.**

**CREMEANS CONCRETE & SUPPLY COMPANY, INC., et al., Appellees.**

[Cite as *D.G.M., Inc. v. Cremeans Concrete & Supply Co., Inc.* (1996), 111 Ohio App.3d 134.]

Court of Appeals of Ohio,
Fourth District, Gallia County.

No. 95CA10.

Decided May 16, 1996.

*Oths, Heiser, Regan & Miller* and *Joseph A. Oths,* for appellant.

*D. Dean Evans,* for appellees.

STEPHENSON, Judge.

This is an appeal from an order of the Gallia County Court of Common Pleas, pursuant to Civ.R. 60(B)(1), granting relief from a previous default judgment entered against Cremeans Concrete & Supply Co., Inc., and Frank A. Cremeans, appellees, on the claims brought against them by D.G.M., Inc., appellant. The following error is assigned for our review:

"The lower court erred by abusing its discretion in granting Appellee's motion to vacate judgment."

The record reveals the following facts pertinent to this appeal. On September 29, 1994, appellant filed its complaint for breach of contract against appellees. It was averred therein that appellant had prepared a bid for a project with the Ohio Department of Transportation ("ODOT") and had, in turn, solicited a bid from appellee, Cremeans Concrete, to supply it with materials for that project. An agreement was allegedly reached between the two companies and a bid (based, in part, upon that agreement) was submitted to ODOT. The contract was later awarded to appellant. However, Cremeans Concrete failed to deliver the materials at the price which the parties had supposedly agreed upon. Appellant averred that it was forced to cover and obtain concrete elsewhere. Further, appellant averred that the cover materials cost $9,655 more than the price agreed upon with Cremeans Concrete. It was also alleged that appellee, Frank Cremeans (an officer and principal of Cremeans Concrete), had never intended to deliver materials at the quoted price. Appellant demanded compensatory damages for breach of contract in the amount of $9,655 and punitive damages in the amount of $28,965.

Neither appellee filed an answer to the complaint within rule and so, on November 3, 1994, appellant moved for default judgment pursuant to Civ.R.

56(A). Certified mail return receipts in the record indicated that service of process had been properly made on appellees, and, thus, the court below entered default judgment against them.[1] On November 22, 1994, appellant caused a certificate of judgment to be prepared and filed against appellees in the office of the Clerk of Courts for Gallia County. Appellees appeared for the first time in this action the following day and moved for relief from judgment under Civ.R. 60. An affidavit by Mr. Cremeans was attached to the motion and stated, among other things, that there had never been any actual contract for the supply of concrete between his company and appellant. Mr. Cremeans further attested that, at the time the complaints were served, he was in the middle of his campaign for representative to the United States Congress for the Sixth Congressional District. The affiant further attested that "he was preoccupied with the work concerning the campaign and had no time to devote to this suit; that as a result of same and through inadvertence he was not able to file a response to this suit, being on the road and out of his business office."

The matter came on for a hearing on April 10, 1995, at which time Mr. Cremeans admitted that he had signed the certified mail receipt for service of process of the complaint upon him and his company.[2] However, he stated that the demands of his congressional campaign were such that he was no longer involved in the day-to-day operations of his business and that the mail was left to the employees of Cremeans Concrete to be handled by them. The witness also testified that he was aware of the lawsuit against him because he had read about it in the newspaper prior to the election of November 8, 1994 (and, thus, prior to default judgment being entered against him). Evidence was further presented that there had been a "mistake" in the price for concrete quoted to appellant and that the quote was "substantially less than what it should have been." Mr. Cremeans stated that the error in price was communicated to appellant.

On April 21, 1995, the lower court filed its entry sustaining the motion and granting appellees relief from judgment. The court found from the facts and circumstances of this case that the failure of appellees to respond to the claims against them was the result of "excusable neglect." It was further determined that appellees did not have "actual notice" of the claims pending against them until after the default judgment was entered. This appeal followed.

---

1. The default judgment included only compensatory damages. No award was made for punitive damages. ·

2. It is not entirely clear from the transcript of proceedings below whether Mr. Cremeans was aware of the significance of the certified mail. At one point, on cross-examination, he conceded that he knew the mail was in "reference to a civil action filed against [him] and the company." Later, however, on redirect, he stated that such testimony was "mistaken."

■ It is well-settled law that, in order to obtain relief from judgment, a party must demonstrate that he is entitled to relief under one of those grounds stated in Civ.R. 60(B)(1) through (5), that he has a meritorious defense or claim to present if relief is granted, and that the motion is made within a reasonable time, which, for those grounds set forth in Civ.R. 60(B)(1) and through (3), means not more than one year after judgment. See *Argo Plastic Prod. Co. v. Cleveland* (1984), 15 Ohio St.3d 389, 391, 15 OBR 505, 506–507, 474 N.E.2d 328, 330; *Svoboda v. Brunswick* (1983), 6 Ohio St.3d 348, 351, 6 OBR 403, 405–406, 453 N.E.2d 648, 650–651; *GTE Automatic Elec., Inc. v. ARC Indus., Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus. A failure to establish any one of these will cause the motion to be overruled. *S. Ohio Coal Co. v. Kidney* (1995), 100 Ohio App.3d 661, 667, 654 N.E.2d 1017, 1020–1021; *Hopkins v. Quality Chevrolet, Inc.* (1992), 79 Ohio App.3d 578, 581, 607 N.E.2d 914, 916. The lower court expressly found that the latter two of these requirements had been met (*i.e.,* that the motion had been timely filed and that appellees had asserted a meritorious defense). Appellant does not challenge those findings on appeal. However, the lower court also found that appellees had satisfied the first requirement for relief under Civ.R. 60(B) and shown that their failure to answer appellant's complaint and the entry of default judgment against them was the result of "excusable neglect." This is the crux of this appeal. Appellant argues that the trial court erred in its finding of excusable neglect and further erred in granting relief from judgment. We agree.

■ We acknowledge at the outset that there is no bright-line test to determine whether a party's neglect has been excusable or inexcusable. See *Hopkins,* 79 Ohio App.3d at 582, 607 N.E.2d at 916–917. Such a determination must be made from all the individual facts and circumstances in each case. See *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 21, 520 N.E.2d 564, 567; *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 249, 18 O.O.3d 442, 445–446, 416 N.E.2d 605, 609–610. The concept of "excusable neglect" must be construed in keeping with the proposition that Civ.R. 60(B)(1) is a remedial rule to be liberally construed. *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections* (1993), 67 Ohio St.3d 134, 136, 616 N.E.2d 869, 871; *Doddridge v. Fitzpatrick* (1978), 53 Ohio St.2d 9, 12, 7 O.O.3d 5, 6–7, 371 N.E.2d 214, 217. Moreover, we are admonished that cases should be decided on their merits whenever possible. See *State ex rel. Montgomery v. R & D Chem. Co.* (1995), 72 Ohio St.3d 202, 204, 648 N.E.2d 821, 822–823; *Perotti v. Ferguson* (1983), 7 Ohio St.3d 1, 3, 7 OBR 256, 257–258, 454 N.E.2d 951, 952–953; *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 175, 63 O.O.2d 262, 269–270, 297 N.E.2d 113, 122. However, there is a limit to the reach of these principles. A "complete disregard of the judicial system" should not, for instance, be tolerated under the guise of "excusable neglect." See *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 79, 514

N.E.2d 1122, 1125–1126; *GTE Automatic Elec., supra*, 47 Ohio St.2d at 153, 1 O.O.3d at 90, 351 N.E.2d at 117. This case clearly represents an instance where a litigant's neglect has crossed the boundary from excusable to inexcusable.

■ The uncontroverted evidence adduced below shows that service of process was properly completed on both appellees. Mr. Cremeans conceded that he was the party who signed the certified mail receipts for the summons and complaint served on him and his company. He simply left the matter to be attended to by company employees as he pursued his election campaign. We note that at least one appellate district in this state has ruled that a person who receives certified mail, but then asserts he has not gotten actual notice, is not entitled to relief under Civ.R. 60(B). See *Erie Ins. Co. v. Drusky* (Dec. 23, 1987), Summit App. No. 13184, unreported, 1987 WL 31931; *Michael D. Tully Co., L.P.A. v. Dollney* (1987), 42 Ohio App.3d 138, 140, 537 N.E.2d 242, 244–245. A strict application of the principles from these two cases would require us to rule against appellees on nothing more than Mr. Cremeans's admission that he signed for service of process. However, given that "excusable neglect" turns on the facts and circumstances of each case, we feel compelled to look for something more and to analyze the reasons why the process was ignored.

Mr. Cremeans testified below that he signed for the summonses and complaints during the final weeks of his 1994 election campaign. It was uncontroverted below that he was away from his office virtually all the time during this period and that his days were extremely hectic and fast-paced. The demands of his election campaign, as well as personnel absences, also created chaos at the offices of Cremeans Concrete during that time. The critical question to be resolved in the cause *sub judice* is whether these circumstances excused the negligent failure of appellees to respond to the claims against them within rule. This court certainly has no lack of respect for those who represent us at the federal level in Congress. By the same token, however, there is nothing in the law which holds an elected official to a lesser standard than any other litigant in our judicial system. Appellees have cited no authority of law for that proposition, and we have found none in our own research.

■ A failure to plead or respond after admittedly receiving a copy of a complaint is not "excusable neglect." *Katko v. Modic* (1993), 85 Ohio App.3d 834, 838, 621 N.E.2d 809, 811–812. Likewise, the neglect of an individual to seek legal assistance after being served with court papers is not excusable. *Associated Estates Corp. v. Fellows* (1983), 11 Ohio App.3d 112, 116, 11 OBR 166, 170–171, 463 N.E.2d 417, 421–422. This court has also stated in the past that a business owner who was ill could not claim excusable neglect for completely *ignoring* his mail or, more important, for not delegating a competent agent to handle his affairs. See *Andrew Bihl Sons, Inc. v. Trembly* (1990), 67 Ohio App.3d 664, 667,

588 N.E.2d 172, 173–174. Mr. Cremeans admitted below that he "ignored" the green certified mail receipts after signing them. He also admitted to knowing at the time that such mail was in reference to a lawsuit, although he later retracted that admission on redirect. Irrespective of his degree of knowledge at the time he received service of process, Mr. Cremeans was certainly aware of the pending lawsuit when he read about it in the paper just prior to the November 1994 elections. This is made manifest by the following colloquy during the hearing below:

"Q. When was it that you read this in the paper about this lawsuit?

"A. I'm not sure.

"Q. That was uh, before the election, was it not?

"A. Oh, yes."

Despite his awareness of the lawsuit, Mr. Cremeans took no immediate steps to attend to the matter. His reasons for delay were explained as follows:

"[Q.] * * * Can you give us a reason why, knowing about the lawsuit before the election, that you didn't either contact your counsel or take some steps to respond if this was a matter of dialogue during your campaign?

"A. Well, as I indicated earlier it was uh, first of all, I did very little with the business and was preoccupied with the race. * * * "

Mr. Cremeans was clearly aware of the pending lawsuit. He nevertheless continued to ignore the matter until after the election and after default judgment had been entered against him and a judgment lien executed thereon. This ongoing disregard of the legal process, in order to attend to other matters, is not "excusable neglect" under Ohio law.

We also note that our decision is consistent with rulings from other jurisdictions applying procedural rules similar to Civ.R. 60(B). A total disregard of legal process (summons and complaint) is not "excusable neglect." *Robson v. Willers* (Mo.App.1990), 784 S.W.2d 893, 896; *State ex rel. Miles v. Mitchell* (1983), 64 N.C.App. 202, 306 S.E.2d 857, 859; *Bender v. Liebelt* (N.D.1981), 303 N.W.2d 316, 318. The failure of a corporate defendant's president to act, after being properly served with process, is not "excusable neglect." *Winter Park Arms, Inc. v. Akerman* (Fla.App.1967), 199 So.2d 107, 109. Preoccupation with business matters is no defense for ignoring service of process, *H & H Glass Co., Inc. v. Wynne* (1986), 289 S.C. 389, 346 S.E.2d 523, 526, and failure to respond due to more important or pressing business matters does not establish "excusable neglect." *Siewing v. Pearson Co.* (1987), 226 Mont. 458, 736 P.2d 120, 122.

It is clear from these cases, both in Ohio and elsewhere, that a litigant who has properly received service of process is not free to simply ignore that

summons and complaint (so as to focus his attention on other more pressing matters) and then later claim that his failure to respond was due to "excusable neglect." Appellees have cited no exception to this rule which would apply with respect to running a campaign for elected political office and we have found none in our own research. Mr. Cremeans, by his own admission, was fully aware of the lawsuit against him and his company at least by the time he read about it in the paper (before judgment was entered against him) if not back when he signed the two certified mail receipts. Again, by his own admission, he "just ignored" those receipts after signing them. Appellees cannot claim under these circumstances that their failure to respond was the result of "excusable neglect." A motion for relief from judgment under Civ.R. 60(B) is directed to the sound discretion of the trial court and that court's ruling cannot be disturbed absent a showing of an abuse of discretion. *Griffey, supra,* 33 Ohio St.3d at 77, 514 N.E.2d at 1123–1124; *Strack v. Pelton* (1994), 70 Ohio St.3d 172, 174, 637 N.E.2d 914, 915–916. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Masters v. Masters* (1994), 69 Ohio St.3d 83, 85, 630 N.E.2d 665, 666–667; *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218, 222; *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855, at paragraph two of the syllabus. The term "arbitrary," in this context, means without adequate determining principle and governed by no fixed rules or standard. See *Sandusky Properties v. Aveni* (1984), 15 Ohio St.3d 273, 275, 15 OBR 408, 409–410, 473 N.E.2d 798, 800–801. Considering the admissions by Mr. Cremeans in light of the foregoing case law, and given the absence of any authority to support the positions taken by appellees or the court below, the decision to grant relief from judgment was manifestly arbitrary and thus an abuse of discretion.

Appellant's assignment of error is, for these reasons, well taken and hereby sustained. The April 21, 1995 entry granting relief from the previous default judgment is reversed.

*Judgment reversed.*

Shannon and Doan, JJ., concur.

Raymond E. Shannon, J., retired, and Rupert A. Doan, J., of the First Appellate District, sitting by assignment.