DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Washington County Common Pleas Court order that overruled a motion to vacate default judgments entered against John A. Garreffa and RC Trucking, Inc. (RC Trucking), defendants below and appellants herein, on the subrogation claims brought against them by State Farm Mutual Automobile Insurance Company (State Farm), plaintiff below and appellee herein.
 {¶ 2} The following error is assigned for our review:
 {¶ 3} "The trial court abused its discretion in denying defendants' motion to vacate default judgments."
 {¶ 4} On September 15, 2000, Appellant John A. Garreffa was involved in an accident with Benjamin Parks — an insured covered under an automobile policy issued by State Farm. State Farm paid Parks under that policy and, on May 16, 2002, brought subrogated claims against both Garreffa and RC Trucking and alleged that Garreffa negligently caused the accident. State Farm asked for $7,656.56 in compensatory damages.[1]
 {¶ 5} From the outset, State Farm had problems obtaining service on either defendant. Service was attempted on appellant, Garreffa, in Pompano Beach, Florida, but certified mail was returned with the notation "not known" on the envelope. On September 5, 2002, counsel filed an affidavit stating that Garreffa's residence was unknown and could not be ascertained with reasonable diligence. Ultimately, pursuant to R.C. 2703.20, the Ohio Secretary of State was served on his behalf.[2] RC Trucking was served on two occasions at an address in North Taswell, Virginia, but certified mail was unclaimed. On November 20, 2002, service was successful at an address in Pounding Mill, Virginia.
 {¶ 6} Neither appellant filed an answer or otherwise responded to the action and State Farm requested default judgments. On December 6, 2002, the trial court entered a default judgment against Garreffa in the amount of $7,656.56. On January 9, 2003, the court entered a similar judgment against RC Trucking.
 {¶ 7} As a judgment creditor, State Farm could now run a credit check on Garreffa. This effort located another address for him in Richlands, Virginia. On January 30, 2003, appellee's counsel sent a letter to that address and advised him of the judgment and warned him that a certified copy of the judgment was forwarded to the Ohio Bureau of Motor Vehicles for purposes of suspending Garreffa's driver's license if he did not pay the judgment. Although Garreffa later admitted to having received that letter, he neither responded to the letter nor attempted to re-open the trial proceedings.
 {¶ 8} In March, 2003, the Ohio Department of Public Safety notified Garreffa that his driving privileges in the State of Ohio were suspended pursuant to R.C. 4509.37 until the judgment was satisfied.[3] Garreffa notified his insurer who, four months later, retained counsel who, in another three months, took action to re-open the case.
 {¶ 9} On October 15, 2003, appellants filed a motion to vacate the default judgments. Appellant argued that the default judgments were void ab initio because service of process had not been completed and personal jurisdiction had not been properly obtained. Appellant also asserted that they were entitled to relief from judgment under Civ.R. 60(B)(1),(3)(5) because of excusable neglect, misconduct of opposing counsel and because it would be unjust to allow the judgments to stand Appellee State Farm filed opposing memorandum and appellants filed a reply memorandum.
 {¶ 10} On December 10, 2003, the trial court overruled the motion. The court quickly dispensed with appellants' claim that the judgment was void ab initio and found that the court possessed both personal and subject matter jurisdiction. Regarding Civ.R. 60(B) relief, the court found that appellants made no showing of mistake, excusable neglect, fraud, misconduct or anything else that justified relief under those provisions. The court remarked about Garreffa's conduct and the timing of the motion to vacate in light of the January 10, 2003 letter forwarded to him by opposing counsel:
 {¶ 11} "This Court would be inclined to grant the Defendants' Motion for Relief From Judgment had Mr. Garreffa contacted his or his company's insurance carrier upon first receiving contact from the Plaintiff's attorney. However, even at this point in time, Defendant Garreffa had no interest in making contact with any party to begin to contest the default judgment that was filed in this action."
 {¶ 12} In other words, the fact that the parties waited nearly nine months from the time they first learned of the default judgments until they actually tried to contest the judgments weighed heavily in the trial court's decision to overrule their request for relief. The court entered judgment on December 29, 2003 and this appeal followed.
 {¶ 13} Appellants contend that the trial court erred by denying their motion to vacate the default judgments. Appellants, however, no longer argue that they are entitled to such relief because the judgments are void or because the provisions of Civ.R. 60(B)(3) apply. Instead, appellants narrow their arguments on appeal to Civ.R. 60(B)(1)(5). We find neither argument to be persuasive.
 {¶ 14} Our analysis begins with the proposition that in order to prevail on a Civ.R. 60(B) motion, the movant must establish (1) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through(5); (2) the existence of a meritorious claim or defense to present if relief is granted; and (3) that the motion is made within a reasonable time which, for those grounds set forth in Civ.R. 60(B)(1)-(3), means not more than one year after judgment. See State ex rel. Richard v. Seidner
(1996), 76 Ohio St.3d 149, 151, 666 N.E.2d 1134; Svoboda v.Brunswick (1983), 6 Ohio St.3d 348, 351, 453 N.E.2d 648; GTEAutomatic Elec., Inc. v. ARC Indus., Inc. (1976),47 Ohio St.2d 146, 351 N.E.2d 113, at paragraph two of the syllabus. A failure to establish any one of these criteria will cause the motion to be overruled. See Strack v. Pelton (1994), 70 Ohio St.3d 172,174, 637 N.E.2d 914; Rose Chevrolet, Inc. v. Adams (1988),36 Ohio St.3d 17, 20, 520 N.E.2d 564.
 {¶ 15} Initially, we note that we need not address the trial court's ruling that appellants failed to establish grounds for relief under Civ.R. 60(B)(1)-(5) in view of the fact that the court's finding that the motion was not filed within a reasonable amount of times is dispositive. In his motion for relief from judgment, Garreffa admitted that he received the January 30, 2003 letter from appellee's counsel that alerted him to the existence of the default judgment. He explained that he simply "disregarded" that letter because he thought it "coercive." When, however, Garreffa received the March 5, 2003 notice of license suspension he appeared to take the matter seriously and contacted his insurer. Even then, his insurer did not retain counsel until July 31, 2003, and counsel filed a motion for relief from judgment on October 15, 2003.
 {¶ 16} The record is somewhat murkier with respect to RC Trucking. While the company was finally served with summons and complaint in November, 2002, it did not take any action in the case sub judice until it joined in the Civ.R. 60(B) motion for relief on October 15, 2003. Appellants explain in their brief that, "by this time, RC Trucking was defunct, and the complaint was never forwarded to their insurer." Appellants did not explain, however, precisely what they meant by a "defunct" legal status or how that status prevented them from responding to the complaint. In a reply memorandum, Jon Deacon (a claims examiner at National Indemnity Company) opined that to the best of his knowledge and belief, RC Trucking was "terminated" as a legal corporation.[4]
 {¶ 17} In short, we find no evidence in the record to explain why RC Trucking could not have either responded to the complaint or requested to vacate the default judgment, particularly after Garreffa notified the insurance carrier in March, 2003. RC Trucking certainly was on notice of the judgments at that point but, like Garreffa, waited approximately seven months before it took any action to vacate them.
 {¶ 18} In any event, seven to nine months had elapsed from the time appellants received notice of the judgments and filed a motion for relief from those judgments. While this is within the one year time limit of Civ.R. 60(B)(1)-(3), and despite the fact that Civ.R. 60(B)(5) has no specific time limit, this does not mean that appellants should prevail.
 {¶ 19} We note that even if a Civ.R. 60(B) motion is filed within the one year time limit, the party that seeks relief from judgment is "still subject to the `reasonable time provision' of Civ.R. 60(B)." Fink, Greenbaum Wilson, Guide to the Ohio Rules of Civil Procedure (2001) 60-41, § 60-11. Caselaw is replete with examples of Civ.R. 60(B) motions filed within the one year time limit that were subsequently denied because courts found that the motions were not filed within a reasonable amount of time. See, e.g., Fouts v. Weiss-Carson (1991), 77 Ohio App.3d 563,566-567, 602 N.E.2d 1231 (four month delay in attempting to vacate default judgment unreasonable without some showing of evidence to explain delay); Adomeit v. Baltimore (1974),39 Ohio App.2d 97, 106, 316 N.E.2d 469 (five month wait after entry of default judgment unreasonable); Childs v. Kelley (Jan. 23, 1991), Hamilton App. No. C-890468 (finding no error in holding that motion to vacate filed 82 days after entry of default judgment was unreasonable).
 {¶ 20} The trial court's December 10, 2003 decision indicates that the court was particularly concerned about the interval of time between the date Garreffa learned of the default judgments and the filing of the motion to vacate.[5] Indeed, the trial court noted that had there not been such a long interval, it would have been inclined to grant the judgment. Because no action occurred for nine months, however, the trial court concluded that the motion was not filed within a reasonable amount of time for purposes of Civ.R. 60(B). We find no error in that ruling.
 {¶ 21} Again, Garreffa admitted in his motion that he knew of the default judgments as early as January, 2003. Nevertheless, he ignored them. Although he claims he disregarded them because of the "bullying" or "threatening" letters sent to him by opposing counsel, the trial court may also have concluded that he ignored them because he was living in another state and knew that State Farm could have some difficulty in collecting its judgment. By his own admission, Garreffa did not contact his insurance carrier until after he received notice that his driving privileges were suspended in Ohio. Until that time Garreffa appeared to be content to let the default judgments stand
 {¶ 22} This Court has previously reviewed cases that involved similar dilatory behavior. In D.G.M., Inc. v. Cremeans Concrete Supply Co., Inc. (1996), 111 Ohio App.3d 134, 675 N.E.2d 1263, a corporate president and agent for service of process ignored service and summons because he was in the midst of an election campaign. A default judgment was taken against appellant and, within days, appellee filed a motion for relief from that judgment. While we analyzed that case in reference to whether appellant's actions before the entry of default judgment amounted to excusable neglect, the same principles that we applied there also apply in the instant case to determine whether the motion was filed in a reasonable period of time:
 {¶ 23} "A failure to plead or respond after admittedly receiving a copy of a complaint is not "excusable neglect." Likewise, the neglect of an individual to seek legal assistance after being served with court papers is not excusable. This court has also stated in the past that a business owner who was ill could not claim excusable neglect for completely ignoring his mail or, more important, for not delegating a competent agent to handle his affairs.
 {¶ 24} * * *
 {¶ 25} [The corporate president] was clearly aware of the pending lawsuit. He nevertheless continued to ignore the matter until after the election and after default judgment had been entered against him and a judgment lien executed thereon. This ongoing disregard of the legal process, in order to attend to other matters, is not "excusable neglect" under Ohio law.
 {¶ 26} We also note that our decision is consistent with rulings from other jurisdictions applying procedural rules similar to Civ.R. 60(B). A total disregard of legal process (summons and complaint) is not "excusable neglect." The failure of a corporate defendant's president to act, after being properly served with process, is not "excusable neglect." Preoccupation with business matters is no defense for ignoring service of process, and failure to respond due to more important or pressing business matters does not establish `excusable neglect.' It is clear from these cases, both in Ohio and elsewhere, that a litigant who has properly received service of process is not free to simply ignore that summons and complaint (so as to focus his attention on other more pressing matters) and then later claim that his failure to respond was due to `excusable neglect.' * * * [The president] by his own admission, was fully aware of the lawsuit against him and his company at least by the time he read about it in the paper (before judgment was entered against him) if not back when he signed the two certified mail receipts. Again, by his own admission, he `just ignored' those receipts after signing them. Appellees cannot claim under these circumstances that their failure to respond was the result of `excusable neglect.'" (Citations omitted.)
 {¶ 27} RC Trucking ignored this case from the very outset and both it and Garreffa ignored it from the time Garreffa found out about the default judgments. Only after Garreffa suffered some detrimental effect from those judgments were the motions filed. Given these facts and circumstances, we find no error in the trial court's determination that the motion to vacate was not filed within a reasonable time. In light of these findings, we need not address whether appellants met the remaining criteria necessary for relief under Civ.R. 60(B).
 {¶ 28} In the end, a motion for relief from judgment is committed to the trial court's sound discretion and the court's ruling will not be disturbed on review absent an abuse of discretion. See State ex rel. Russo v. Deters (1997),80 Ohio St.3d 152, 153, 684 N.E.2d 1237; Griffey v. Rajan (1987),33 Ohio St.3d 75, 77, 514 N.E.2d 1122; Moore v. Emmanuel FamilyTraining Ctr. (1985), 18 Ohio St.3d 64, 66, 479 N.E.2d 879. An abuse of discretion is described as being more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. See Landis v.Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339, 342,695 N.E.2d 1140; Malone v. Courtyard by Marriott L.P. (1996),74 Ohio St.3d 440, 448, 659 N.E.2d 1242; State ex rel. Solomon v. Police Firemen's Disability Pension Fund Bd. of Trustees (1995),72 Ohio St.3d 62, 64, 647 N.E.2d 486. In applying the abuse of discretion standard, appellate courts must not substitute their judgment for that of the trial court. See State ex rel.Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 732,654 N.E.2d 1254; In re Jane Doe 1 (1991). 57 Ohio St.3d 135,137-138, 566 N.E.2d 1181; Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301. Indeed, in order to establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, 256, 662 N.E.2d 1. For the reasons set forth above, we are not persuaded that the trial court abused its discretion in this matter. Accordingly, we hereby overrule appellant's assignment of error and hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Harsha, J.: Concur in Judgment Opinion.
[1] Appellee alleged that Garreffa was employed by RC Trucking and acted in the scope of his employment at the time of the accident.
[2] R.C. 2703.20 states, in pertinent part, that "[a]ny nonresident of this state, being the operator or owner of any motor vehicle, who accepts the privilege extended by the laws of this state to nonresident operators and owners, of operating a motor vehicle or of having the same operated, within this state, or any resident of this state, being the licensed operator or owner of any motor vehicle under the laws of this state, who subsequently becomes a nonresident or conceals his whereabouts, by such acceptance or licensure and by the operation of such motor vehicle within this state makes the secretary of state of the state of Ohio his agent for the service of process in any civil suit or proceeding instituted in the courts of this state against such operator or owner of such motor vehicle, arising out of, or by reason of, any accident or collision occurring within this state in which such motor vehicle is involved."
[3] R.C. 4509.37 provides, in part, that (upon receipt of a judgment for damages) the registrar of motor vehicles shall impose a class F suspension for the period of time specified in R.C. 4510.02(B)(6) of the license and registration and any nonresident's operating privilege of any person against whom such judgment was rendered.
[4] One may ask, however, how could counsel be representing RC Trucking in the case sub judice? We also acknowledge that, as a claims examiner for an insurance company rather than an employee of RC Trucking or an employee at the Virginia Secretary of State's Office, Mr. Deacon has no personal knowledge as to the legal status of the company and would be engaging in nothing more than pure speculation as to its status.
[5] We also note that although Garreffa at least offered some excuse for failing to act in this case (i.e. he was offended by what he perceived as a bullying letter), we find no explanation for RC Trucking's failure to defend its interest or to vacate the default judgments. The only attempt to explain this is an oblique comment in the motion to vacate that because RC Trucking was "defunct" "the complaint was never forwarded to [its] insurer."