[Cite as *Eitel's Towing Serv., Inc. v. D H Trucking, Inc.*, 2022-Ohio-1639.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

EITEL'S TOWING SERVICE, INC., et al.,:

        :      Case No. 21CA3753

    Plaintiffs-Appellants,    :

        :

    v.    :      <u>DECISION AND JUDGMENT ENTRY</u>

        :

D H TRUCKING, INC., et al.,    :

        :      **RELEASED: 05/11/2022**

    Defendants-Appellees.    :

APPEARANCES:

Daniel J. Bennett, Bennett Law Group, LLC, Gahanna, Ohio, for Appellants.

Fridrikh V. Shrayber and Christina Manfredi McKinely, Dentons Cohen & Grigsby P.C., Pittsburgh, Pennsylvania, for Appellee, Pittsburgh Glass Works, LLC.

Wilkin, J.

{¶1} Appellants, Eitel's Towing Service, Inc., and Harper's Garage ("appellants"), appeal the Ross County Court of Common Pleas judgment that granted appellee, Pittsburgh Glass Works, LLC's ("PGW") Civ.R. 60(B) motion for relief from a default judgment. Appellants present a single assignment of error: "The trial court erred in granting [PGW's] motion for relief from judgment." After reviewing the parties' arguments, the record, and the applicable law, we overrule appellants' assignment of error, and affirm the trial court's judgment granting PGW relief from the default judgment.

FACTS AND PROCEDURAL BACKGROUND

{¶2} On May 19, 2020, appellants filed a complaint against PGW and other defendants primarily seeking reimbursement for services they had

performed cleaning up a damaged trailer, as well as removing and storing cargo from the trailer.  On June 18, 2020, D H Trucking, filed an answer, and on July 8, 2020, P.A.M. Transport filed its answer.

{¶3} On July 16, 2020, appellants filed a Civ.R. 55 motion for default judgment against Marah Transportation, LLC ("Marah") and PGW alleging that neither had answered or otherwise responded within 28 days after the complaint was served on both.  On July 20, 2020, the trial court granted appellants' motion for default judgment against Marah and PGW.

{¶4} On July 30, 2020, Marah filed a motion to set aside the default judgment and requested an extension for it to file an answer.

{¶5} On August 27, 2020, PGW filed a motion to set aside the default judgment against it pursuant to Civ.R. 60(B)(1) and (5).  PGW alleged that it was unaware of the lawsuit "because, due to the various mitigation orders issued by Pennsylvania Governor Tom Wolfe related to the COVID-19 pandemic, PGW's entire staff, including its legal department, has been working remotely since March 2020 and was not physically present in their offices."  PGW alleged that it was not aware of the appellants' complaint until after the trial court entered default judgment against PGW.

{¶6} PGW argued that its failure to file a timely response to the complaint was due to excusable mistake, inadvertence, surprise, or excusable neglect under Civ.R. 60(B)(1) or "any other reason justifying relief from the judgment" under (B)(5).  PGW also asserted that it had a meritorious defense because it is not a proper party to appellant's complaint.

{¶7} Appellants filed a memorandum contra asserting that PGW's internal mishandling of the complaint did not warrant PGW relief from the default judgment.

{¶8} The trial court held a hearing on PGW's motion for relief from judgment. Two witnesses testified.

{¶9} PGW's first witness was Doug Palumbo, its production manager. He testified that PGW makes auto glass for "original equipment manufacturers[,]" like Chrysler, and "flat glass." He claimed that PGW ships its glass products using third party shippers. Palumbo testified that he is notified if the shipper is involved in an accident, and would in turn notify PGW's in-house counsel "if things escalated." With regard to the underlying case, Palumbo never notified PGW's in-house counsel of the accident because he "was never made aware of it."

{¶10} Based upon his examination of a "load confirmation agreement," Palumbo maintained that PGW's product was not involved in the accident that resulted in appellant's lawsuit. More specifically, when asked if the load confirmation agreement indicated who owned "the glass racks at issue in the accident[,]" he stated, "it looks like PGW Auto Glass." Palumbo testified that PGW Auto Glass manufactures "after market" auto glass (e.g., products used to replace original parts), while PGW manufactures auto glass for original equipment manufacturers (e.g., products installed in new vehicles).

{¶11} PGW's next witness was its in-house counsel, Xochitl Sandoval. Sandoval testified that she is in charge of all legal services pertaining to PGW's business in the United States, Canada, Germany, China, and Columbia. She

indicated that she is the designee who receives notice of service of process on PGW's behalf. Sandoval further stated that PGW is made aware of lawsuits in numerous ways, including by notice from the "business," their insurance carriers, counsel for the litigant, and from their statutory agent, CCS.

{¶12} She testified that when CCS is served with notice of a lawsuit against PGW, it, in turn, sends paper copies of those documents to her office in Pennsylvania, as well as by e-mail. Upon receiving notice of a lawsuit, she testified that the first thing she typically does is contact outside counsel.

{¶13} Sandoval testified that in 2020 because the pandemic closed her Pennsylvania office, she relocated to her home country of Mexico where she had access to her work e-mail. Sandoval asserted that she was not aware of the paper copies pertaining to appellant's lawsuit that CCS had sent to her Pennsylvania office due to her absence, and was never informed by the business about the lawsuit. The record shows and Sandoval acknowledged that she received e-mails from CCS dated April 21 (that contained a demand letter regarding the lawsuit) and May 22, 2020 (that contained a copy of appellant's complaint), and July 16, 2020 (that contained an answer from P.A.M. Transport Inc.), but she testified that she did not open any of them because:

> this was in the middle of a pandemic situation. I was basically doing pressing matters for the company and trying to be [sic] keep our people safe. Trying to get the facilities open. With these different states ruling and changing orders, we need to be like from day to night like reviewing orders, getting questions from business, dealing with different situations from the supply chain, logistic issues. There were, to be honest with you honestly, I made this mistake of -- but again, it was -- I was trying to keep the business afloat. It was part of my day and I admit, I made that mistake.

However, Sandoval testified that she became aware that PGW was a party to the lawsuit in question sometime near the "end of July 2020" when she received appellants' motion for default judgment. She immediately notified outside counsel, who filed PGW's motion for relief from judgment. She also maintained that "this is the first time that it's happened in my whole career," and "made an internal rule on my book just to forward all these notifications or e-mails to another in-house counsel."

{¶14} Sandoval testified that she receives many e-mails from CCS involving issues other than lawsuits, including orders of garnishment, third-party subpoenas, and other documents.

{¶15} Finally, Sandoval testified that PGW did not own any of the glass racks that were involved in the accident that is the basis of appellant's lawsuit herein.

{¶16} After the hearing, the trial court issued a judgment entry granting PGW's motion for relief from the default judgment finding that PGW filed its Civ.R. 60(B) motion within a reasonable time, asserted a meritorious defense, and

> that the neglect committed by Defendant PGW was excusable, and occasioned by an unprecedented global pandemic. Moreover, "where timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits." Id., citing GTE Automatic Electric, Inc. v. ARC Industries, Inc. 47 Ohio St.2d 146 (1976). [PGW] presented evidence that established it has a meritorious defense – specifically, that it is not even a proper party in interest to this case and was improperly sued. To allow a default

judgment to stand against such a party would effect a gross miscarriage of justice.

It is this judgment that appellants appeal.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING APPELLEE PITTSBURG GLASS WORKS, LLC'S MOTION FOR RELIEF FROM JUDGMENT

**{¶17}** Appellants set forth three arguments why the trial court improperly concluded that PGW's neglect in responding to appellants' complaint was not excusable for purposes of Civ.R. 60(B)(1).

**{¶18}** Appellants first argue that the trial court erred in granting PGW relief because the complaint was timely served on CCS, which forwarded notice of the service to PGW's in-house counsel, who was specifically designated to handle service of process.  Appellants claim that counsel merely failed to timely respond "because of a busy workload created by the Covid-19 pandemic" was not excusable.  Appellants maintain that the present case is indistinguishable from three decisions in which this Court held that the appellant's negligence in not filing timely responses was not excusable neglect under Civ.R. 60(B)(1), citing *D.G.M., Inc. v. Cremeans Concrete & Supply Co.*, 111 Ohio App. 3d 134, 139, 675 N.E.2d 1263 (4th Dist. 1996); *Vanest v. Pillsbury Co.*, 124 Ohio App. 3d 525, 706 N.E.2d 825 (4th Dist. 1997), abrogated on other grounds by *State ex rel. O'Malley v. Russo*, 2019-Ohio-1698, 156 Ohio St. 3d 548, 130 N.E.3d 256; and *Keaton v. Purchase Buyers Group*, 145 Ohio App.3d 796, 2001-Ohio-2569, 764 N.E.2d 1043 (4th Dist. 2001).

{¶19} Appellants also argue that "vague references to the effects of the pandemic that, even if accepted as true, do not demonstrate a causal connection between the effects of the pandemic and a failure to timely answer a complaint[.]" Therefore, PGW has failed to submit sufficient operative facts in this case to support that its neglect herein was excusable under Civ.R. 60(B)(1).

{¶20} Finally, appellants maintain that PGW's "internal procedure for handling service of process was negligent and insufficient where the person designated for handling service of process was too busy to handle service of process[.]"

{¶21} In response, PGW maintains that the trial court did not abuse its discretion in granting its Civ.R. 60(B) motion for relief from judgment. PGW claims that the correct defendant is PGW Auto Glass, LLC, a company that is unrelated to PGW. PGW also maintains that its failure to timely respond was a result of the global pandemic. PGW claims that it was not aware that it was a defendant in appellants' lawsuit until July 27, 2020 when it received appellants' default judgment from CCS. PGW asserts it "thereafter immediately engaged counsel and tried to reach a resolution with opposing counsel." Because these efforts were unsuccessful, on August 27, 2020, PGW filed a Civ.R. 60(B) motion for relief from appellants' default judgment.

{¶22} PGW stresses that we must afford deference to the trial court's judgment. PGW claims that the trial court correctly found that the pandemic was "not some mine-run event that would excuse a party from complying with its legal obligations; rather, it sowed such chaos and uncertainty that in attempting to

navigate the uncharted waters of COVID-19 on an hourly basis, it was excusable–-even if careless---that PGW might fail to comply with its obligations to respond to a lawsuit[,]" i.e., PGW's neglect in failing to timely respond to appellants' lawsuit was excusable within Civ.R. 60(B)(1).

### STANDARD OF REVIEW

**{¶23}** We review a trial court's decision granting or denying a Civ.R. 60(B) motion for relief from a judgment for an abuse of discretion. *Whited v. Whited*, 4th Dist. Washington No. 19CA26, 2020-Ohio-5067, ¶ 8. This is a very deferential standard, which limits our review "to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably; in doing so, the appellate court may not simply substitute its judgment for that of the trial court." *Id.*, citing *Dunford v. Dunford,* 4th Dist. Gallia No. 13CA7, 2014-Ohio-617, ¶ 3. In an appeal involving the review of a trial court's decision denying a party's Civ.R. 60(B) motion, we stated that "in order to establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but passion or bias." *Keaton*, 145 Ohio App. 3d at 805., citing *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996).

**{¶24}** " 'Abuse of discretion' has been described as including a ruling that lacks a 'sound reasoning process.' " *State v. Morris*, 132 Ohio St. 3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d

597 (1990). "It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *Id.*

### 1. Civ.R. 60(B)

**{¶25}** There are five grounds upon which a party may seek relief from a judgment under Civ.R. 60(B):

> (1) Mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment.

However, in order to be successful

> on a Civ.R. 60(B) motion, a movant must demonstrate: (1) a meritorious defense or claim to present if relief is granted; (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken.

*Whited*, 4th Dist. Washington No. 19CA26, 2020-Ohio-5067, ¶ 10, citing *Bank of Am., N.A., Kuchta,* 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1030, ¶ 10-11, citing *GTE Automatic Elec. Inc. v. ARC Industries, Inc.,* 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus.

" 'These [three] requirements are independent and in the conjunctive; thus the test is not fulfilled if any one of the requirements is not met.' " *Id.* at ¶ 10, quoting *Strack v. Pelton*, 70 Ohio St.3d 172, 174, 637 N.E.2d 914 (1994).

{¶26} "Civ.R. 60(B) is a remedial rule to be liberally construed with a view toward effecting a just result." *W. Pub. Co. v. McCrae*, 4th Dist. Scioto No. 91CA1971, 1991 WL 260826, *6 (Nov. 21, 1991), citing *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St. 3d 17, 21, 520 N.E.2d 564 (1988), *see also Whited* at ¶ 8 ("Generally, Civ.R. 60(B) strikes a balance between the need for final judgments and the need for courts to vacate their orders to further justice and fairness."), citing *Doddridge v. Fitzpatrick*, 53 Ohio St.2d 9, 12, 371 N.E.2d 214 (1978).

{¶27} The trial court found: (1) PGW presented a meritorious defense, (2) PGW's Civ.R. 60(B) motion for relief from judgment was filed in a reasonable time, and (3) PGW's neglect in responding to appellant's lawsuit was excusable under Civ.R. 60(B)(1). Appellants do not contest the trial court's first two determinations. Rather, it maintains that the trial court "erred" in finding that PGW set forth operative facts that its failure to timely respond to appellants' complaint was excusable neglect. Therefore, our analysis is focused on the trial court's finding of "excusable neglect."

## 2. Excusable Neglect

{¶28} "The term 'excusable neglect' is an elusive concept which has been difficult to define and to apply. Nevertheless, [the Supreme Court has] previously * * * stated that the inaction of a defendant is not 'excusable neglect' if it can be labeled as a 'complete disregard for the judicial system.' " *Kay v. Glassman*, 76 Ohio St.3d 18, 20, 665 N.E.2d 1102 (1996), citing *GTE Automatic Elec.*, 47 Ohio St.2d 146, 153, 351 N.E.2d 113 (1976); *Rose*, 36 Ohio St.3d 17, 21, 520 N.E.2d 564 (1988), fn. 4. " '[T]here is a fine line between excusable and inexcusable

neglect and the courts, including this court, must defer to the trial court's determination on whether the neglect is excusable given our abuse of discretion standard.' " *Settlers Bank v. Burton*, 4th Dist. Washington No. 12CA38, 2014-Ohio-335, ¶ 41, quoting *Norman v. Hanoverton Motor Cars, Inc.,* 7th Dist. Hanover No. 11 CO 13, 2012-Ohio-2697, ¶ 27.  Excusable neglect must be construed consistent with the principle that "Civ.R. 60(B)(1) is a remedial rule to be liberally construed, while bearing in mind that Civ.R. 60(B) constitutes an attempt to 'strike a proper balance between the conflicting principles that litigation must be brought to an end and justice should be done.' "  *Colley v. Bazell*, 64 Ohio St. 2d 243, 248, 416 N.E.2d 605 (1980), quoting 11 Wright & Miller, Federal Practice & Procedure 140, Section 2851.

{¶29} "The determination of whether neglect is excusable or inexcusable must take into consideration all the surrounding facts and circumstances, and courts must be mindful that cases should be decided on their merits, where possible, rather than procedural grounds."  *Seniah Corp. v. Buckingham, Doolittle & Burroughs, L.L.P.*, 5th Dist. Stark No. 2016CA00039, 2016-Ohio-7516, ¶ 25, citing *Griffey v. Rajan,* 33 Ohio St.3d 75, 79–81, 514 N.E.2d 1122 (1987); *Evans v. Shapiro*, 4th Dist. Ross No. 18CA3670, 2019-Ohio-3209, ¶ 12.  " 'These include the amount of time between the last day that an answer would have timely been filed and the date the default judgment was granted, [and] "the amount of the judgment awarded[.]" ' "  *Peoples Bank, Natl. Assn. v. McGhee*, 4th Dist. Gallia Nos. 12CA11, 13CA4, 2013-Ohio-3859, ¶ 14, quoting *State v. Hulgin,* 9th Dist. Summit No. 26719, 2013-Ohio-2794, ¶ 13, quoting *Colley* at

249. "[C]ourts must remain mindful of the fact that ' "[m]atters involving large sums should not be determined by default judgments if it can reasonabl[y] be avoided." ' " [brackets sic.] *Id.*, quoting *Colley* at 249, fn.5, quoting *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 245 (3d Cir.1951).

**{¶30}** Finally, " '[w]here timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits.' " *Id.*, quoting *GTE Automatic Elec., Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976) at paragraph three of the syllabus.

ANALYSIS

A. *Vanest*, *D.G.M., Keaton*

**{¶31}** Appellants cite three cases that they claim require us to reverse the trial court's judgment: *Vanest*, 124 Ohio App. 3d 525, 528-38, 706 N.E.2d 825 (1997*)* (Being preoccupied with another lawsuit is not excusable neglect for missing a legal deadline), *D.G.M.*, 111 Ohio App. 3d 134, 136-41, 675 N.E.2d 1263 (1996) (Being preoccupied with the work concerning a political campaign and had no time to devote to this suit was not excusable neglect), *Keaton*, 145 Ohio App. 3d 796, 798-806, 2001-Ohio-2569, 764 N.E.2d 1043 (Proof of service of complaint required reversal of judgment granting a party relief from a judgment due to excusable neglect and a remand to take additional evidence). Together these three cases can reasonably be interpreted as standing for the proposition that a party's neglect in responding to a legal obligation due to their involvement with their own personal and/or business obligations is not "excusable" for

purposes of Civ.R. 60(B).  However, we must remember that excusable neglect must be decided on the facts and circumstances of each case.

**{¶32}** Regarding the instant case, the trial court found that PGW's neglect was excusable because of the problems created by the pandemic.  We are just beginning to emerge from the COVID-19 pandemic that has caused as many as 100 million infections and 2.1 million total deaths.[1]  And it is beyond doubt that it disrupted our lives in many ways.  *See e.g. Sw. Ohio Basketball, Inc. v. Himes*, 2021-Ohio-415, 167 N.E.3d 1001, ¶ 7 (12th Dist.) (Plaintiffs' challenged certain restrictions contained in a health order pertaining to COVID-19 that governed the resumption of sports and was ordered by the Ohio Department of Health).  The legal profession was not spared from such problems as evidenced by the Supreme Court's order tolling "time requirements" regarding numerous court rules due to the pandemic. *See In re Tolling of Time Requirements Imposed by Rules Promulgated by Supreme Ct. & Use of Tech.*, 158 Ohio St. 3d 1447, 2020-Ohio-1166, 141 N.E.3d 974.  A claim that a delay in responding to legal deadline is excusable neglect because of COVID-19 is not an unprecedented argument. *See State ex rel. Chambers v. Adult Parole Auth.*, 8th Dist. Cuyahoga No. 109750, 2020-Ohio-5435, ¶ 3.  Therefore, we find that, unlike *Vanest, D.G.M.,* and *Keaton* where the neglect was purportedly caused by the respective parties' own voluntarily-accepted obligations, the cause of the neglect here was a result of a unique pandemic over which PGW had no control and which caused

---

[1] https://www.ncbi.nih.gove/pmc/articles/PMC7866842/.

significant difficulties on a world-wide scale.  Consequently, we find that *Vanest*,

*D.G.M.,* and *Keaton* are not controlling in the instant case.

### B.  The Trial Court's Discretion

**{¶33}** Having concluded that *Vanest, D.G.M.,* and *Keaton* are not

controlling, we now examine whether the trial court abused its discretion in

granting PGW's motion for relief.

**{¶34}** The record reveals that Sandoval was required to work remotely

due to the pandemic.  Therefore, she did not receive paper copies of appellant's

complaint, as normally occurs when she is working in her Pennsylvania office.

She also testified that she was not informed of the lawsuit by anyone from the

production facility, as sometimes occurs.  Rather, she received three e-mails

from CCS over a three-month period that pertained to appellants' lawsuit.

Sandoval testified that during this period she was receiving over 100 e-mails

daily due to the pandemic.  She testified that she did not notice the e-mails

pertaining to appellants' lawsuit because the pandemic caused "pressing matters

for [PGW]," including "keep[ing] our people safe" and "facilities open" that

resulted in working "day and night."  Sandoval testified that it was not until the

"end of July" 2020 that she became aware of the lawsuit after receiving a copy of

the motion for default judgment whereupon she immediately notified outside

counsel.  Further, she testified that she instituted an internal policy that copied

her e-mails to PGW's other in-house counsel.

**{¶35}** Additionally, the amount of the default judgment in this case was substantial ($123,266.70) and PGW presented undisputed testimony at the Civ.R.60(B) hearing from two witnesses (Sandoval and Palumbo) that Pittsburgh Auto Glass was the proper defendant in the underlying case, not PGW. Based on this testimony, not relieving PGW of the default judgment against it would have subjected PGW to a financial judgement absent liability and with no recourse to challenge the judgment because it is no longer a party in the case.[2] In this respect, the court's decision granting PGW's Civ.R. 60(B) motion appears to "strike a proper balance between the conflicting principles that litigation must be brought to an end and justice should be done." *Peoples Bank, Natl. Assn.*, 4th Dist. Gallia Nos. 12CA11, 13CA4, 2013-Ohio-3859, ¶ 13. As the trial court stated, to allow the default judgment to stand "would effect a gross miscarriage of justice" by imposing a monetary judgment upon a party that lacks any culpability."

**{¶36}** In analyzing the trial court's decision for an abuse of discretion, we find a comment made in *Vanest* particularly pertinent herein:

> "Discretion necessarily connotes a wide latitude of freedom of action on the part of the trial court, and a broad range of more or less tangible or quantifiable factors may enter into the trial court's determination. Simply put, two trial courts could reach opposite results on roughly similar facts and neither be guilty of an abuse of discretion."

---

[2] We recognize that the issue of whether PGW was a proper defendant in the underlying case is not necessarily resolved by this testimony, but granting the motion for relief at minimum permits PGW to present this defense, as opposed to attempting to dispute a substantial monetary judgment for which the company may not be liable without being involved in the lawsuit.

> While the members of this court may have reached a different result, we cannot say that the trial court's decision constituted an abuse of its discretion.

*Vanest*, 124 Ohio App. 3d at 535, quoting *McGee v. C & S Lounge*, 108 Ohio App.3d 656, 661, 671 N.E.2d 589 (1996).

Under the particular circumstances of this case, we find that the trial court's decision was not so palpably and grossly violative of fact or logic that it evidences a perversity of will and defiance of judgment. Rather, we find that the court utilized a "sound reasoning process" by considering the evidence and the law, and resolving any doubt in favor of granting PGW's motion for relief from the default judgment consistent with paragraph three of the syllabus of *GTE Automatic Elec., Inc. Morris*, 132 Ohio St. 3d 337, 2012-Ohio-2407, 972 N.E.2d 528, at ¶ 14.

## CONCLUSION

**{¶37}** Consequently, because the trial court's decision granting PGW's Civ.R. 60(B) motion for relief from the default judgment is not unreasonable, arbitrary, or capricious, the trial court did not abuse its discretion. Accordingly, we overrule appellants' assignment of error and affirm the trial court's judgment granting PGW's Civ.R. 60(B) motion for relief from judgment.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**